GLADYS HANFORD, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 16, 1925.   No. 23045.

1. **Street Railways:** DUTY AT STREET INTERSECTIONS. It is the duty of the motorman in charge of a street car when approach-

ing a street intersection to keep a sharp lookout for travelers upon the street, and have his car under such control that it can be readily stopped.

2. ———: NEGLIGENCE: QUESTION FOR JURY. Where a motorman was momentarily unable to see, his eyes being filled with tears occasioned by being strangled by an insect blown into his mouth and throat, and took his handkerchief to wipe his eyes, and, while so doing, permitted his car to drift onward so that, when he could again see, he was so close to a car ahead of him that he was unable to avoid a collision, held, that the question of his negligence was for the jury.

3. ———: DAMAGES: QUESTION FOR JURY. Where a pregnant woman at a street intersection, standing within a few feet of the track upon which two of defendant's street cars collided, was greatly frightened thereby and jumped back, and immediately felt sick, and three days later suffered a miscarriage, the reasonableness of her fright and subsequent conduct were questions for the jury.

4. Negligence. Where one to whom another owes a legal duty is placed by the latter's negligence in a position of reasonably apprehended peril, and is injured in a reasonable attempt to escape, the negligent person is liable in damages.

5. Damages. Where a pregnant woman is placed in a position of reasonably apprehended peril by the negligence of one owing her a legal duty, and suffers a miscarriage as the proximate result of shock and fright produced by such negligence, she may recover damages from the wrongdoer.

6. ———: CAUSE OF ACTION. Physical injury proximately resulting from fright or terror, produced by negligence of another charged with a duty to the injured person, gives a cause of action.

7. ———. Verdict for $2,000 for miscarriage and attendant suffering held not excessive.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. Affirmed.

*John L. Webster*, for appellant.

*Kennedy, Holland, DeLacy & McLaughlin*, contra.

Heard before MORRISSEY, C. J., GOOD, ROSE, and EVANS, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

Action for damages for personal injuries. The facts upon which plaintiff bases her action are, that as plaintiff approached the intersection of Twenty-fourth and H streets, city of Omaha, intending to take a street car going south, she observed one of defendant's cars stopping at the north side of the intersection and started running in an effort to catch it, but it started forward at about the time that she reached the east curb of Twenty-fourth street, when the motorman, perceiving her, beckoned her to come on and brought the car to a stop at the point where its rear end was about in the middle of the intersection. Plaintiff thereupon left the curb and approached the street car. At the same time a following street car was approaching from the north at a distance of one-half block to a block, the motorman of which saw the plaintiff, and plaintiff saw the following car. Plaintiff continued on her course until she was within two and one-half to four feet of the first car, when the following car crashed into the first car with sufficient force to break a two by two piece of oak wood, a part of the fender, and caused the breaking of a glass in the front vestibule of the first car by impact with the elbow of the motorman who was thrown against it. The negligence charged is negligently and recklessly running into the standing car in close proximity to plaintiff, and not maintaining a proper lookout. The first car was only moved a few inches by the collision, and the fender of the second car was only slightly damaged, so that by tying it up with a rope the car could proceed. The plaintiff alleges that by the collision occurring so close in front of her she was caused to jump backward, whereby she suffered a strain causing her to become sick within one hour and to suffer a miscarriage within three days after the accident; that she was compelled to go to a hospital and undergo medical and surgical treatment; that she suffered great pain and will continue to suffer in the future.

The answer of the defendant was a general denial. The jury found for the plaintiff and assessed her damages at

$2,000, and from judgment therefor defendant appeals.

The defendant alleges error in the giving of a number of instructions by the court. We have examined them carefully and, unless it exist in those hereafter noted, we find no error in them. They correctly presented to the jury the questions of negligence and proximate cause in accordance with the theory of the plaintiff.

Instruction Nos. 9 and 10 by the court, and No. 2 requested by defendant and refused, present the serious question to be determined on this appeal, and they are as follows:

"Instruction No. 9. You are instructed that the fact that the plaintiff was not struck by the street cars or by any part of said cars would not bar her from recovering against defendant, if you believe and find that the defendant was guilty of negligence as set forth in plaintiff's petition, and that such negligence resulted in the street cars in question running together, and that the plaintiff at said time while in the exercise of due care was in such close proximity to said collision as to cause her, in the exercise of reasonable care and as a proximate result of the collision to jump backwards, or step backwards suddenly, and if you believe and find further that the said sudden step or jump backwards, if you find she did so step or jump backwards, caused the plaintiff to suffer physical injuries."

"Instruction No. 10. If you find from a preponderance of the evidence that the collision was the result of negligence on the part of the employee or employees of the defendant, and that, as a natural and proximate cause thereof, the plaintiff, while in the exercise of reasonable care, was caused to jump or suddenly to step backwards because of the collision of the cars in such close proximity to her and because of a reasonable fear on her part of danger to herself, then you are instructed that for such physical injuries as you find, from a preponderance of the evidence, were suffered by plaintiff as the natural and proximate result thereof, the plaintiff would be entitled to recover against the defendant."

Hanford v. Omaha & C. B. Street R. Co.

"Defendant's Request No. 2. You are instructed that if you believe from the evidence that, at the time of the collision in question, plaintiff became frightened, and received a nervous shock, and that the subsequent miscarriage of the plaintiff was due to and caused by the mental fright and nervous shock which the plaintiff suffered as the result of the collision, then, and in that event, the plaintiff cannot recover, and your verdict must be for the defendant."

By instruction No. 8 the court told the jury that, if the defendant was negligent as charged, and plaintiff had reasonable ground to believe that she was in a place of peril by reason of the collision, and in jumping back acted as a reasonably prudent person, and if as a proximate result of her movement back she suffered injuries, their verdict should be for the plaintiff. We do not deem it seriously contended that this instruction does not state the law applicable to the state of facts recited therein, and we think the evidence was sufficient to submit those questions to the jury.

But the defendant contends that it was a question for the jury whether the miscarriage suffered by the plaintiff was the result of her jumping backward or of the fright which she received on account of the collision, defendant's position being that in the latter event defendant would not be liable, and, therefore, the court erred in not presenting to the jury defendant's theory of the cause of the accident. Defendant's proposition is that the law does not award. damages for mere fright, and, *a fortiori*, that it will not award damages for the consequences of fright. That damages may not be recovered for mere fright unaccompanied or followed by physical injuries proximately resulting therefrom is well settled. And it is also well established that fright and mental anguish and suffering following a physical injury caused by negligence are proper elements of damage to be considered by the jury. The authorities are divided upon the question whether damages may be recovered for physical injuries resulting wholly in consequence of fright, such as nervous prostration and its at-

tendant ills, and, in the case of a pregnant woman, a miscarriage. The question is new in this jurisdiction and must be determined from general principles and authoritative precedents based upon sound reasoning.

The industry and learning of counsel on both sides have presented for our consideration a multitude of cases quite sufficient to present a complete exposition of the holdings of the various courts and the reasons underlying them. We have examined most of them, but it would be impracticable to consider them in detail, and we must be content with a reference to a number of leading cases on both sides and a statement of our conclusions. For the purposes of the discussion, we will assume that the defendant owed a duty to the plaintiff, under the circumstances, not to negligently injure her, and that it failed in that duty; that defendant was justifiably frightened by the collision, and that the miscarriage and attendant suffering of plaintiff was the proximate result of her fright. Stripped of all details, then, the question is: If plaintiff had merely stood still and in the natural order of things suffered a miscarriage solely as the result of fright, may she recover?

We will now examine a number of leading cases cited by defendant. *Mitchell v. Rochester R. Co.*, 151 N. Y. 107, was a case where the horses of one of defendant's street cars were negligently turned toward the plaintiff and were stopped in such close proximity to her that she stood between the horses' heads, but her body was not touched in any manner. As the result, she was very badly frightened, became unconscious, and suffered a miscarriage. It was held, as stated in the syllabus: "No recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury." The court said: "If it be admitted no recovery can be had for fright occasioned by the negligence of another, it is somewhat difficult to understand how a defendant would be liable for its consequences. Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom." A recovery

was denied on principles of public policy, the danger of fictitious or speculative claims being presented, and that the damages were too remote. One of the cases cited in support of the opinion was *Lehman v. Brooklyn City R. Co.*, 47 Hun (N. Y.) 355, which merely announced the doctrine, but without discussion or citation of authority.

*Ewing v. Pittsburgh, C. & St. L. R. Co.*, 147 Pa. St. 40, was also cited. In that case the woman plaintiff was in her house near defendant's railroad track, upon which there was a collision which threw the cars onto plaintiff's premises and against her dwelling-house, greatly frightening her, so that she became sick and disabled and suffered great mental and physical pain. It was held that no cause of action existed, for the reason that plaintiff had suffered no bodily harm, that defendant owed her no duty to protect her from fright, and that her injuries were too remote.

In *Phillips v. Dickerson*, 85 Ill. 11, plaintiff was in bed, but the defendant did not know that fact, or that she was within hearing, and the plaintiff was greatly frightened by the noise of a fight on the porch, near her bedroom, between plaintiff's husband and defendant. The case does not discuss the question under review but held the injuries, a miscarriage, too remote.

*Morris v. Lackawanna & W. V. R. Co.*, 228 Pa. St. 198, held: "The rule is applicable to a miscarriage resulting from a nervous shock to a woman occasioned by an electric car in which she was riding bumping over the track at an open switch," there being no evidence to warrant a finding that the miscarriage was caused by any physical injury.

*Reed v. Ford*, 129 Ky. 471, was another case of fright occasioned by an assault by defendant upon a third person, the defendant not knowing of her presence in an adjoining room, and plaintiff suffering no physical injury, and it was held: "No recovery can be had for injuries resulting from mere fright caused by the negligence of another, where no immediate personal injury is received"—citing *Mitchell v. Rochester R. Co.*, *supra*, and *Gulf, C. & S. F. R. Co. v. Hayter*, 93 Tex. 239. It was also held that negligence under the cir-

cumstances could not be imputed to defendant or regarded as the proximate cause of plaintiff's injuries.

*Nelson v. Crawford,* 122 Mich. 466, held that fright occasioned plaintiff by a practical joke played by defendant disguised as a woman and entering plaintiff's bedroom, her husband being present, plaintiff suffering a miscarriage from the shock, presented no cause of action, as plaintiff suffered no bodily injury.

*St. Louis, I. M. & S. R. Co., v. Bragg,* 69 Ark. 402, was where plaintiff and her children were put off a train on a dark night at a place where she was required to cross a cattle-guard to reach the depot, and it was held: "That nervous prostration and permanent ill health caused by fright on discovering that she had to cross the cattle-guard was not the natural and probable consequences of defendant's negligence," the court remarking: "If any fright existed, it must certainly have been over in a minute or two, when assistance arrived. We therefore feel compelled to hold that the long train of physical ills of which she complains was not the natural or probable consequence of defendant's negligence."

*Hutchinson v. Stearns,* 115 App. Div. (N. Y.) 791, applied the rule of the *Mitchell* case to the claim of the plaintiff to recover damages for being deprived of the services of his wife who suffered a miscarriage occasioned by becoming frightened during an assault by defendant upon her husband. A similar case was *McGee v. Vanover,* 148 Ky. 737, in which it was stated by the court that it seems to be well settled that the law allows no recovery for injuries resulting from mere fright, caused by the wrongful act or negligence of another, where no immediate personal injury is received.

A case much relied upon is *Spade v. Lynn & B. R. Co.,* 168 Mass. 285, holding: "In an action to recover damages for an injury sustained through the negligence of another, there can be no recovery for a bodily injury caused by mere fright and mental disturbance." The facts were that plaintiff was a passenger upon defendant's car, and that defend-

ant's agent, in attempting to remove an intoxicated person, negligently created a disorder and quarrel in the car, whereby plaintiff was subjected to a severe nervous shock by which she was physically prostrated and suffered great mental and physical pain. The case seems to be strictly within the language of the general principle, as no bodily injuries preceded, attended or followed the mental distress. After stating that the exemption from liability for mere fright, terror, alarm or anxiety does not rest upon the assumption that these do not constitute an actual injury, or may not be the direct and immediate consequence of the negligence, the court, by Allen, J., proceeds: "It must be admitted that a timid or sensitive person may suffer not only in mind, but also in body, from such cause. Great emotion may and sometimes does produce physical effects. The action of the heart, the circulation of the blood, the temperature of the body, as well as the nerves and the appetite, may all be affected. A physical injury may be directly traceable to fright, and so may be caused by it. We cannot say, therefore, that such consequences may not flow proximately from unintentional negligence, and if compensation in damages may be recovered for a physical injury so caused, it is hard on principle to say why there should not also be a recovery for the mere mental suffering when not accompanied by any perceptible physical effects. It would seem, therefore, that the real reason for refusing damages sustained from mere fright must be something different; and it probably rests on the ground that in practice it is impossible satisfactorily to administer any other rule." And further: "The logical vindication of this rule is, that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright; and that this would open a wide door for unjust claims, which could not successfully be met."

Among other cases cited by defendant are: *Victorian Railways Commissioners v. Coultas*, 13 App. Cas. (Eng.) 222 (criticized in *Dulieu v. White*, 2 K. B. (Eng.) (1901)

669, and disapproved in *Bell v. Great Northern R. Co.*, 26 L. R. (Ir.) 428); *Miller v. Baltimore & O. S. W. R. Co.*, 78 Ohio St. 309; *Huston v. Freemansburg Borough*, 212 Pa. St. 548; *Gulf, C. & S. F. R. Co. v. Trott*, 86 Tex. 412, mental suffering only; *Smith v. Gowdy*, 196 Ky. 281; *Braun v. Craven*, 175 Ill. 401, holding that St. Vitus' dance as a consequence of fright was not reasonably to be expected.

The above cases sufficiently show the theory upon which the mental anguish rule, if we may so term it, has been applied to cases where the mental disturbance proximately results in bodily or physical injuries, and the reasons supporting that rule made use of to deny recovery for such bodily injuries.

There is equally respectable authority sustaining the affirmative of our postulate. *Pankopf v. Hinkley*, 141 Wis. 146, was an action for damages for a miscarriage as the result of severe fright and shock. The petition alleged that plaintiff suffered an injury to her body, and the ruling was upon demurrer, but the opinion treats the miscarriage as the bodily injury. The occasion of plaintiff's fright was the negligent striking of the horses attached to the carriage in which she was riding, by the automobile of the defendant, and the allegation was that, as the result of said fright and shock, plaintiff suffered a miscarriage. The court held: "When physical injury flows directly from extreme fright or shock, caused by the ordinary negligence of one who owes the duty of care to the injured person, such fright or shock is a link in the chain of proximate causation as efficient as physical impact from which like results flow."

In *Lindley v. Knowlton*, 179 Cal. 298, the action was to recover damages for injuries to the physical health of the plaintiff occasioned by fright due to an attack upon her and her children by an escaped chimpanzee. She was not touched by the animal, and her ill health was due solely to fright, and the court, in distinguishing the case from those denying recovery for mere fright, remarked that those cases were only applicable where the fright alone is made the gravamen of the action, but that in the case at bar

physical detriment was pleaded and there was evidence in support thereof.

In *Baltimore & O. R. Co. v. Harris*, 121 Md. 254, a railway engineer, while his train was standing at a highway crossing and the plaintiff, a young woman, was passing in front of the engine, blew an unusually and unnecessarily loud whistle and permitted an unnecessary amount of steam to escape from the engine, greatly frightening plaintiff and causing her, as a direct result of the fright, to fall, striking her face upon one of the rails, injuring her teeth and breaking her jaw. The contention of the defendant was the same as here, that as there was no physical impact there could be no recovery, but the holding was otherwise, on the strength of the case of *Green v. Shoemaker & Co.*, 111 Md. 69, which will now be considered. In that case it was held: "When material physical injury has resulted from fright, caused by defendant's wrongful act, an action lies to recover damages therefor; but no action lies to recover damages for mere fright which does not result in a physical injury." The case was for throwing rocks and stones against the plaintiff's dwelling through blasting operations by defendant, and the question was stated to be: "Does a cause of action lie for physical injury resulting from fright and nervousness caused by the wrongful acts of the defendants?" The case is not strictly in point, as it is based rather upon defendant's acts constituting a nuisance, a direct tort, rather than mere negligence, but serves to distinguish between actions for mere fright and those for physical injuries resulting from fright.

A case squarely in point for the plaintiff is *Purcell v. St. Paul City R. Co.*, 48 Minn. 134, where plaintiff was a passenger on defendant's street car and suffered a miscarriage caused solely by great fright occasioned by the apparent imminence of a collision between the car and a cablecar at a crossing, which situation was due to defendant's negligence. The sudden fright and shock threw her into violent convulsions, resulting in a miscarriage and subsequent illness. No collision occurred, and plaintiff suffered

no immediate bodily injury; her only injuries were due to fright. The court, after reviewing two cases where the plaintiff was injured in an endeavor to escape an imminent peril, and discussing the question of proximate cause, said: "In such case, though there comes, as an intermediate cause between the negligence and the injury, a condition or operation of mind on the part of the injured passenger, the negligence is nevertheless the proximate cause of the injury." Defendant's counsel seeks to distinguish this case on the score of the increased care due from a carrier to a passenger, but we do not appreciate the distinction, for in any case of negligence the foundation is a breach of duty, and when such breach is shown it seems immaterial, upon the question of liability, whether ordinary or extraordinary care was required.

*Morey v. Lake Superior T. & T. Co.,* 125 Wis. 148, was where the plaintiff without negligence approached within three or four feet of defendant's railroad track at a crossing, and was so severely frightened by the approach of defendant's train without having given any warning signal that he became unconscious and fell toward and partly on defendant's track and was struck by the train. It was held that plaintiff's injuries were proximately caused by the negligence of defendant.

In *Kimberly v. Howland,* 143 N. Car. 398, it was held: "Mere fright unaccompanied or followed by physical injury, cannot be considered as an element of damage; but where the fright occasions physical injury not contemporaneous with it, but directly traceable to it, a right of action for such injury, resulting from a negligent act, arises." Also: "Where the plaintiff's evidence shows that the wife was lying on her bed heavy with child at the moment the rock crashed through the roof of her home, and, though it did not strike her, it greatly shocked her nervous system, and nearly caused a miscarriage, and that she has never recovered from the effects of it: *Held,* that she has a right of action for the physical injury sustained — a wrecked

Hanford v. Omaha & C. B. Street R. Co.

nervous system—resulting from negligence whether wilful or otherwise."

In *Simone v. Rhode Island Co.,* 28 R. I. 186, it was held: "Where the negligence of the defendant is such as to cause fright, and as a natural consequence of such fright a series of physical ills follow, or if the fright as a cause gives rise to nervous disturbances and those in turn to physical troubles, the defendant is liable for the physical results of its own negligence, although there was no actual physical injury at the time of the accident." The action was to recover for loss of services of plaintiff's daughter who was incapacitated through physical injuries resulting from fright and nervous shock caused by a collision on defendant's street railway. While this was a carrier case, no emphasis was laid upon that circumstance, and the New York and Pennsylvania cases and others cited by defendant are discussed and disapproved, and *Purcell v. St. Paul City R. Co.,* 48 Minn. 134, *Sloane v. Southern C. R. Co.,* 111 Cal. 668, and *Dulieu v. White, supra,* followed. In the *Dulieu* case the case of *Victorian Railways Commissioners v. Coultas, supra,* upon which the case of *Mitchell v. Rochester R. Co.,* 151 N. Y. 107, was largely based, is learnedly discussed and held not to state the true doctrine, and the court held: "Damages which result from a nervous shock occasioned by fright unaccompanied by any actual impact may be recoverable in an action for negligence if physical injury has been caused to the plaintiff."

In *Arthur v. Henry,* 157 N. Car. 438, the following instruction was approved: "Mere fright is not actionable. Because a man or woman gets frightened at something, it is not actionable. If you find that the plaintiff in this cause was frightened, that she was put in fear, the court charges you that that is not actionable; but if you find that she was put in fear and frightened to such an extent that she suffered physical pain, suffered in body and mind, and was made sick, and that such fright and fear were brought about by the negligence of defendant and was its proximate cause,

then the law says it is actionable." The case followed *Kimberly v. Howland, supra.*

*Sloane v. Southern C. R. Co.,* 111 Cal. 668, held that, while mental suffering alone gave no cause of action, a shock to the nervous system producing bodily suffering is a physical injury compensable in damages.

In *Sternhagen v. Kozel,* 40 S. Dak. 396, it was held: "When physical injury accompanies a fright as its effect, the injured party may recover for the fright, for the physical injury, and for any mental injury accompanying such fright and physical injury, the same as where fright results from physical injury."

Plaintiff also cites *O'Meara v. Russell,* 90 Wash. 557; *Dulieu v. White, supra; Gulf, C. & S. F. R. Co. v. Hayter,* 93 Tex. 239. Valuable notes discussing the subject will be found in *Huston v. Freemansburg Borough,* 3 L. R. A. n. s. 49 (212 Pa. St. 548), and 8 R. C. L. 525, sec. 80.

The rule contended for by defendant is a very narrow one, and, even in jurisdictions sustaining it, its harshness is recognized to such an extent that the slightest physical impact is sufficient to prevent its application. In *McGee v. Vanover,* 148 Ky. 737, two persons assaulted plaintiff's husband in her presence, by which she was greatly frightened, and one of them "struck or pushed" her aside that he might get at the husband. No bodily injury to plaintiff was thereby occasioned, but she was allowed to recover against the one pushing her for being immediately and continuously subjected to great physical and mental suffering, which caused a miscarriage, though recovery was denied against the other assailant of the husband.

In *Warren v. Boston & M. R.,* 163 Mass. 484, it was held that being compelled to jump out of a buggy through fright caused by defendant's negligence was a sufficient physical injury to prevent the application of the rule. See, also, *Armour & Co. v. Kollmeyer,* 161 Fed. 78.

The rule as announced in *Spade v. Lynn & B. R. Co.,* 168 Mass. 285, and *White v. Sander,* 168 Mass. 296, was frankly stated to be "not put as a logical deduction from the gen-

eral principles of liability in tort, but as a limitation of those principles upon purely practical grounds." *Smith v. Postal Telegraph Cable Co.*, 174 Mass. 576.

Let us then consider the reasons underlying the rule and their force when applied to the present situation. It is said that mental anguish is so easily simulated, and so wholly within the subjective consciousness of the plaintiff, that no adequate means exist for administering justice in such cases; that there is no rule for measuring the damage; this is the doctrine of expediency or public policy. This is quite persuasive in those cases definitely within the class described. Such cases are illustrated by *Long v. Chicago, R. I. & P. R. Co.*, 15 Okla. 512, and *Nichols v. Central V. R. Co.*, 94 Vt. 14, where damages were sought for mental anguish occasioned by the negligent dropping of caskets by which the corpses of relatives of plaintiff were exposed; *Kramer v. Ricksmeier*, 159 Ia. 48, the cause being use of violent language by defendant over the telephone; also in the telegram cases, where recovery is sought for mental suffering only—*Western Union Telegraph Co. v. Chouteau*, 28 Okla. 664, where they are exhaustively collated, and *Southern Express Co. v. Byers*, 240 U. S. 612, for delay in delivery of a casket and burial clothes. Whatever may be the true basis for it, the rule is no doubt salutary when applied to cases within its reasoning; but when we consider that the very matters for which recovery is denied upon such reasons are permitted to be considered and measured when they are the result of trauma, the force of the argument is somewhat diminished as the same difficulties are present. These difficulties disappear, however, when actual physical injury exists, either as a cause or result of fright; and the doctrine of expediency has no application. We do not deem it a logical deduction that because there can be no recovery for mere fright, *ergo,* there can be none for the consequences of fright. Because in the one case it is not possible to prove legal damage furnishes no reason for denying them when they may be proved. It is everywhere conceded that, if by negligence of defendant the plaintiff is placed in a posi-

tion of peril and is greatly frightened thereby, and in a reasonable effort to escape suffers physical injury, he may recover; and yet his injury is the consequence of fright. To illustrate: Plaintiff is driving over a railroad crossing and just escapes being struck by a train negligently operated by defendant. If he suffers severe nervous shock and mental agony, and no more, there can be no recovery. But, if in his effort to escape he jumps from his vehicle and breaks his leg, defendant is liable, if his act was reasonable under the circumstances. The most that can be said is that in some cases recovery may not be had for the consequences of fright; but this refutes the logic of the rule.

In *Dulieu v. White, supra,* Kennedy, J., aptly remarked: "It may, I conceive, be truly said that, viewed in relation to an action for negligence, direct bodily impact is, without resulting damage, as insufficient a ground of legal claim as the infliction of fright. That fright, where physical injury is directly produced by it, cannot be a ground of action merely because of the absence of any accompanying impact appears to me to be a contention both unreasonable and contrary to the weight of authority."

We think the situation is well stated by the annotator in the *Huston* case, 3 L. R. A. n. s. 49: "The courts which argue that, if there can be no recovery for fright alone, it must logically follow that there can be no recovery for the consequences of the fright, lose sight of the fact that in the first case the sole basis of the action is the fright, which the courts regard as too intangible and uncertain to be the foundation of a right to damages, while in the second case the basis of the action is not the fright, but the physical injury, a tangible, material harm, which the law has always regarded as a legal injury."

Some cases hold that the damages are too remote; that they cannot be considered the proximate result of the negligence because of the intervening fright; but before an intervening cause may operate to insulate the negligence, it must be an independent cause—one not set in motion by defendant. So we are of opinion, upon familiar principles,

that if defendant's negligence was the proximate cause of fright, and fright, in natural and probable sequence, the proximate cause of physical injury, the chain of causation is complete, and the fright is not an independent cause. *Purcell v. St. Paul City R. Co.*, 48 Minn. 134.

In the case at bar it is clearly established that the miscarriage may have been caused by the fright alone of plaintiff, or by the jump backward. It follows from what we have said that plaintiff was entitled to recover whether her injuries resulted from the jump backward or solely from the fright, and that the court did not err in refusing defendant's request No. 2, nor in giving instructions 9 and 10.

It is further contended that defendant was guilty of no negligence. The evidence for defendant is to the effect that the motorman in charge of the second car, upon observing the first car start forward from the usual stopping place, released his brake and allowed the car to drift southward about half a block in the rear of the first car; that an insect was blown into his mouth and throat, strangling him and causing his eyes to water, whereupon he took his handkerchief to wipe his eyes, and when he was able to open them discovered that the first car had stopped about 20 feet in front of him; that he used all proper efforts, but was unable to prevent the collision. We think the question was for the jury. The motorman was not so incapacitated as to relieve him from all responsibility in the control of his car. It was his duty to keep a lookout for travelers when approaching the intersection, and he had seen the plaintiff. He might have collided with her instead of the car. The jury might well conclude that, if he was momentarily unable to keep a proper lookout, he might, in the exercise of ordinary care, have applied the brake until he *could* see, instead of assuming that the first car would continue on its way and allowing his car to proceed. Counsel for defendant states he would have been guilty of negligence if he had permitted himself to become blinded; but, having become blinded without his fault, the question is not whether he was negligent in attempting to wipe his eyes, but in allowing his car

to drift while so doing. It is suggested that there was no obligation upon defendant to protect plaintiff from fright. This was stated in *Ewing v. Pittsburgh, C. & St. L. R. Co.* 147 Pa. St. 40, in a case where plaintiff was in her house a distance from the railroad. The true rule is stated in *Smith v. Gowdy*, 196 Ky. 281: "The law imposes no obligation to protect from fright and the consequences thereof when disconnected with and unaccompanied by a legal duty." In this case, as we have seen, there was a legal duty to keep a lookout for plaintiff.

It is urged that the motorman on the second car was not aware of the delicate condition of plaintiff, and therefore the miscarriage could not have been anticipated by him as the natural or probable consequence of a failure on his part to exercise ordinary care. We think the correct rule for actions for negligence is that the wrongdoer is liable for all injury directly resulting from the wrongful acts, whether their particular form or character could or could not have been foreseen by him, and therefore the fact that the motorman did not know of the delicate condition of plaintiff does not relieve the defendant from liability for the actual, direct consequences of such wrong. *Brown v. Chicago, M. & St. P. R. Co.*, 54 Wis. 342; *Cowan v. Western Union Telegraph Co.*, 122 Ia. 379; *Mann Boudoir Car Co. v. Dupre*, 54 Fed. 646; *Colorado Springs & I. R. Co. v. Nichols*, 41 Colo. 272; *Morris v. St. Paul City R. Co.*, 105 Minn. 276.

Lastly, it is urged that the damages are excessive. The court is in no better situation than the jury to determine the damages; in fact, not so favorably placed, not having the benefit of seeing the plaintiff and the witnesses. The question is peculiarly for the jury, and the amount awarded ($2,000) warrants no inference of passion or prejudice on their part. Neither is it out of line with verdicts in similar cases as collected in 17 C. J. 1119, sec. 460. The jury were properly instructed that they should not allow any damages for the death of the unborn child, or mental suffering, sorrow or regret thereby occasioned plaintiff. Under these

circumstances we do not feel warranted in reducing the judgment.

AFFIRMED.