Zachey N. HOPPER, Betty Jo Hopper and Jana Hopper, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 9084.

United States District Court
D. Colorado.

July 30, 1965.

Fugate & Mitchem, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., Robert E. Long, Asst. U. S. Atty., Denver, Colo., for defendant.

WILLIAM E. DOYLE, District Judge.

In this action, which has been brought pursuant to the Federal Tort Claims Act, Title 28 U.S.C. § 1346(b), the United States has moved to dismiss claims 2 and 3 of the complaint contending that there has been a failure to allege facts sufficient to form a basis for the granting of relief.

The allegations are that on October 4, 1963, one Alvin Dale, an employee of the United States Postal Service, who was acting within the course and scope of his employment, negligently and carelessly operated a motor vehicle whereby he struck and killed Judy A. Hopper. In Count I the plaintiffs Zachey Hopper and Betty Jo Hopper, seek recovery as parents of Judy A. Hopper for her wrongful death. In Count 2, which is here under attack, Jana Hopper, a minor, alleges that she is the sister of decedent and that at the time and place and within the immediate vicinity of the impact, she witnessed the killing of her sister as the proximate result of which she suffered severe injuries to her nervous system and sustained a neurosis, accompanied by severe mental and physical suffering.

In Claim 3 the plaintiffs' parents demand recovery for past and future medical expenses incident to the treatment of the plaintiff Jana Hopper.

The validity of Claims 2 and 3 are here in question and it is to be noted that the complaint does not reveal whether the plaintiff Jana Hopper was herself threatened with bodily injury or whether she was physically removed from the orbit of danger, so to speak. Accordingly, we are called upon to determine whether under applicable law there can be recovery for alleged nervous injuries which produce physical repercussions where the injuries are entirely the result of the witnessing of an impact and death of another, in this instance a member of the plaintiff's family. The position of the Government is that under Colorado law this type of action is barred by the principle that a physical contact with the person, plaintiff, is a necessary requisite for recovery from negligently inflicted nervous shock. Dismissal of the complaint is demanded at this early stage of the case because of its failure to allege that the plaintiff suffered any physical trauma or even nominal contact. Therefore, the first question for consideration is whether freedom from mental suffering or nervous shock caused by negligent conduct is an interest which the law protects absent some actual physical contact to the person of the plaintiff.

Until recently the courts have been quite reluctant to recognize an interest in peace of mind except where incident to some accompanying physical injury. The grounds for denial of relief have been various. It has been said that mental disturbance cannot be measured in money and so cannot serve as a basis for the action; that physical consequences are too remote to merit legal protection; and that there would be a vast increase in litigation—that to recognize this type of interest would open the floodgates, so to speak. See Prosser, The Law of Torts, 3rd Edition, pages 346, 347. It is this latter ground which has been the real roadblock to recognition. Docket-conscious courts have been apprehensive about opening a new source of filings which might greatly increase the already heavy caseload. The courts have also, of course, felt insecure about the ability of the court and jury to properly evaluate. It is, of course, obvious that what might be described as the administrative case, or docket control argument, is not a valid basis for barring an otherwise meritorious lawsuit. Nor does the argument which says that the court is incompetent to discover and deal with the imaginary or fraudulent claim appealing. Both of these would disregard principle and proceed wholly upon grounds of expediency. With the increase of medical knowledge of nervous illnesses it has become apparent that even so-called normal persons are susceptible to physical repercussions which stem from nervous shock. There has been a slow evolution and case by case attrition which has at first reduced the physical trauma requirement to a nominal touching and which finally led to its abandonment in many cases. The trauma rule is articulately expounded in the nineteenth century decision of the Supreme Judicial Court of Massachusetts in Spade v. Lynn & Boston R. R. Co., 168 Mass. 285, 47 N.E. 88, 38 L.R.A. 512 (1897). This was a ruling decision for many years. Now, however, a majority of more recent decisions which have considered the subject have rejected the holding of Spade that physical impact to the person is a necessary pre-condition to recovery for negligently-inflicted nervous shock or traumatic neurosis.[1] A

1. Kaufman v. Western Union Tel. Co., 224 F.2d 723 (5 Cir. 1955); Central of Georgia R. Co. v. Kimber, 212 Ala. 102, 101 So. 827 (1924); Sloane v. Southern Cal. R. Co., 111 Cal. 668, 44 P. 320, 32 L.R.A. 193 (1896); Orlo v. Connecticut Co., 128 Conn. 231, 21 A.2d 402 (1941); Laird v. Natchitoches Oil Mill Co., 10 La.App. 191, 120 So. 692 (1929); Green v. T. A. Shoemaker & Co., 111 Md. 69, 73 A. 688, 23 L.R.A.,N.S., 667 (1909); Purcell v. St. Paul City R. Co., 48 Minn. 134, 50 N.W. 1034, 16 L.R.A. 203 (1892); Cashin v. Northern Pac. R. Co., 96 Mont. 92, 28 P.2d 862 (1934); Hanford v. Omaha & C. B. St. R. Co., 113 Neb. 423, 203 N.W. 643, 40 A.L.R. 970 (1925); Chiuchiolo v. New England Wholesale Tailors, 84 N.H. 329, 150 A. 540 (1930); Battalla v. State, 10 N.Y.2d 237, 219

minority of courts continue to hold to the impact rule even though the slightest touching suffices.[2]

Prosser, in the text previously mentioned, records that the impact requirement received a body blow in 1961 when the New York Court of Appeals overruled one of its leading decisions. This occurred in Battalla v. State, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961). The persuasiveness and soundness of the reasoning in Battalla is such as to leave little that can be added. Because of this it is quoted at least in part below.[3] The same reasons in somewhat more spirited terms appear in the dissenting opinion of Mr. Justice Musmanno in Bosley v. Andrews, 393 Pa. 161, 142 A.2d 263.

Unquestionably sensory trauma can under some circumstances be severe. Although the human nervous system in a

N.Y.S.2d 34, 176 N.E.2d 729 (1961); Watkins v. Kaolin Mfg. Co., 131 N.C. 536, 42 S.E. 983, 60 L.R.A. 617 (1902); Simone v. Rhode Island Co., 28 R.I. 186, 66 A. 202, 9 L.R.A.,N.S., 740 (1907); Mack v. South Bound R. Co., 52 S.C. 323, 29 S.E. 905, 40 L.R.A. 679 (1890); Sternhagen v. Kozel, 40 S.D. 396, 167 N.W. 398 (1918); Houston Electric R. Co. v. Dorsett, 194 S.W.2d 546 (Tex. 1946); Cherry v. General Petroleum Co., 172 Wash. 688, 21 P.2d 520 (1933); Lambert v. Brewster, 97 W.Va. 124, 125 S.E. 244 (1925); Colla v. Mandella, 1 Wis.2d 594, 85 N.W.2d 345, 64 A.L.R.2d 95 (Wis.1957).

2. Christy Bros. Circus v. Turnage, 38 Ga.App. 581, 144 S.E. 680 (1928); Freedman v. Eastern Mass. St. R. Co., 299 Mass. 246, 12 N.E.2d 739 (1938); Morton v. Stack, 122 Ohio St. 115, 170 N.E. 869 (1930); Porter v. Delaware, L. & W. R. Co., 73 N.J.L. 405, 63 A. 860 (1906); McCardle v. George B. Peck Dry Goods Co., 191 Mo.App. 263, 177 S.W. 1095 (1913); Hess v. Philadelphia Transp. Co., 358 Pa. 144, 56 A.2d 89 (1948); Kentucky Trac. & T. Co. v. Roman, 232 Ky. 285, 23 S.W.2d 272 (1929).

3. The language of the Court is as follows:

"Before passing to a résumé of the evolution of the doctrine in this State, it is well to note that it has been thoroughly repudiated by the English courts which initiated it, rejected by a majority of American jurisdictions, abandoned by many which originally adopted it, and diluted, through numerous exceptions, in the minority which retained it. Moreover, it is the opinion of scholars that the *right* to bring an action should be enforced. It is fundamental to our common-law system that one may seek redress for every substantial wrong. * * * Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. 'The argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in *all* cases because in *some* a fictitious injury may be urged as a real one.' Green v. T. A. Shoemaker & Co., 111 Md. 69, 81, 73 A. 688, 692, 23 L.R.A.,N.S., 667.

"In any event, it seem that fraudulent accidents and injuries are just as easily feigned in the slight-impact cases and other exceptions wherein New York permits a recovery, as in the no-impact cases which it has heretofore shunned. * * *

Not only, therefore, are claimants in this situation encouraged by the Mitchell disqualification to perjure themselves, but the constant attempts to either come within an old exception, or establish a new one, lead to excess appellate litigation (see Gulf, C. & S. F. Ry. Co. v. Hayter, 93 Tex. 239, 54 S.W. 944, 47 L.R.A. 325). In any event, even if a flood of litigation were realized by abolition of the exception, it is the duty of the courts to willingly accept the opportunity to settle these disputes.

"The only substantial policy argument of Mitchell is that the damages or injuries are somewhat speculative and difficult to prove. However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions, and 'it is beside the point * * * in determining sufficiency of a pleading'. * * * In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that it was proximately caused by defendant's negligence. In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims."

normal individual is capable of absorbing without consequence a surprising amount of stress and strain, it is also true that there is a delicate balance which can react severely where the impact is substantial. This is, however, a matter of medical fact and medical judgment which is subject to diagnosis, especially where there is a consequential physical reaction. See Smith, "Relation of Emotions to Injury and Disease," 30 Va.L. Rev. 193 (1944).

■ In summary, therefore, we conclude that the injury here complained of is one which is entitled to the protection of the law—which is not to be dismissed as deficient because of the lack of a trauma.

■ Injury such as that described in the complaint can be serious and the old requirement of accompanying physical trauma is not a justifiable basis for barring such claims. Neither the fraudulent claim bugaboo nor the flood of litigation fear has ever been and is not now valid. A person who has suffered physical injury induced by nervous shock negligently inflicted is entitled to an opportunity to prove that her injury is genuine.

Determination that the injury complained of is one which the law should protect against unintentional invasion does not dispose of this case. There remains the question whether the injury as described in the complaint, which does not contain any allegation that the plaintiff was herself exposed to hazard of physical harm, is within the orbit of foreseeable risk as measured by the prudent man standard, or whether the defendant's conduct is negligent with respect to such interest. The argument is that the plaintiff who complains of nervous shock derived from viewing a negligently inflicted physical injury or death of another is from the standpoint of the defendant an unforeseeable plaintiff or that here the hazard complained of is not to be anticipated. The Restatement of the Law of Torts, section 436(2) rejects the trauma requirement but draws the line at this point thus limiting liability to those

who are themselves threatened with physical harm.

This is the view which has been adopted in the American cases which have considered the question. See Waube v. Warrington, 216 Wis. 603, 258 N.W. 497, 98 A.L.R. 394 (1935); Reed v. Moore, 156 Cal.App.2d 43, 319 P.2d 80, and Amaya v. Home Ice, Fuel & Supply Co., 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513; Strazza v. McKittrick, 146 Conn. 714, 156 A.2d 149; Berg v. Baum, Sup., 224 N.Y.S.2d 974; Barber v. Pollock, 104 N.H. 379, 187 A.2d 788; Resavage v. Davies, 199 Md. 479, 86 A.2d 879 (modifying Bowman v. Williams, 164 Md. 397, 165 A. 182). See also cases collected in Note 18 A.L.R.2d 220, 230.

On the other hand, the English decisions have recognized that there could be liability notwithstanding that the shock complained of derived from witnessing injury to another. See Hambrook v. Stokes Brothers, 1 King's Bench 156, and see Bourhill v. Young, House of Lords 142, 167 L.T. 261.

It would appear that the numerous courts which have concluded no liability where the plaintiff was not personally subjected to the hazard of physical harm have done so on the ground that a defendant as a prudent man need not anticipate that the plaintiff was a witness only to an accident will incur an injury; they believe that to hold otherwise would stretch the orbit of risk beyond the limits of hazard against which the law affords protection. They are influenced unquestionably by the reasoning of Mr. Justice Cardozo in Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, holding that the plaintiff in that instance was, in view of the risk created, beyond the danger which the defendant created. This result was no doubt appropriate in that case but Palsgraf does not hold that there can be no liability whenever a third person is injured even though the risk to which he is subjected is different from that created. Liability for such secondary consequences has long been recognized and in a great variety of

cases. The question in each instance is whether the hazard created is such that the actor can reasonably foresee that it might in effect ricochet so as to produce a secondary injury to the plaintiff, a bystander.

The weakness of the mentioned decisions is that they rule out each and every case regardless of whether the facts are aggravated or not. There are recognized tests for determining whether the plaintiff is within the ambit of harm so as to subject the defendant to liability. The strength and vitality of the original force which the defendant set in motion is important. If, for example, the defendant driver of an automobile were guilty of excessive speed whereby he subjected pedestrians not only to death but to bloody and gruesome death, the nervous shock to a bystander could be more readily expected. Whether the plaintiff is peculiarly susceptible to nervous injury would be important. Relationship in time and space to the original negligence should be considered. Closeness or remoteness of relationship of the plaintiff and the physically injured person would be important. The fact that the plaintiff's injury might be an unexpected occurrence (looking backward after the event) should not only be weighed but might prove conclusive. There are other tests which might be employed and which would furnish security against an unjust result. In most instances the probable result would be a decision of non-liability. However, we should not close our minds and that is what we do when we adopt a rule that persons suffering fright from witnessing injury to another are invariably beyond the risk. Such a holding is arbitrary. Like the impact rule it is an artificial barrier which has been erected as a matter of policy to rule out the type of case which is here presented. Like the impact rule it will be a matter of case to

case attrition until its erosion is complete. In the meantime it would be indeed presumptuous for this court to make an Erie prediction that the Supreme Court of Colorado will repudiate the limitation in one fell swoop. Although the specific question has not been before the Colorado Court, the available evidence does not show that it has any aversion to the limitation in question. In the light of the numerous American cases which hold nonliability in circumstances like the present, it can not be predicted that the Supreme Court of Colorado would be likely to adopt a rule contrary to the formidable array of cases holding nonliability.

On the other hand, the Colorado Supreme Court has not committed itself to the discredited impact doctrine as the Government contends. We have examined the cases cited, including Grant v. Gwyn, 148 Colo. 56, 365 P.2d 256 (1961); Hall v. Jackson, 24 Colo.App. 225, 134 P. 151 (1913); Diamond Rubber Co. v. Harryman, 41 Colo. 415, 92 P. 922, 15 L.R.A.,N.S., 775 (1907) and Denver C. T. Co. v. Martin, 44 Colo. 324, 98 P. 836 (1908), and many other decisions of that court and contrary to the Government's contention it is probable that the Colorado Supreme Court will follow the present trend away from the impact idea.

It should be noted here that the complaint is somewhat vague with respect to whether the plaintiff was subjected to physical harm. It is possible that such a threat in fact existed. All that we are now told is that the plaintiff was in the vicinity of the injury to her sister.

In view of the foregoing it is concluded that the complaint must be dismissed. Plaintiff is granted fifteen days to amend. If the plaintiff does not amend within the fifteen-day time period, the dismissal will become final.