Lonnie LeRoy OWENS, Sr., Plaintiff,

v.

CHILDRENS MEMORIAL HOSPITAL, OMAHA, NEBRASKA, a corporation, et al., Defendants.

Ida Ruth OWENS, Plaintiff,

v.

CHILDRENS MEMORIAL HOSPITAL, OMAHA, NEBRASKA, a corporation, et al., Defendants.

Civ. Nos. 72-O-201, 72-O-202.

United States District Court, D. Nebraska.

Sept. 5, 1972.

James R. Welsh, Omaha, Neb., and Martin E. Spellman, Perry, Iowa, for plaintiffs.

David A. Johnson, John Grant, and Charles F. Gotch, Omaha, Neb., for defendants.

## MEMORANDUM AND ORDER

DIER, District Judge.

This matter comes before the Court upon defendants' motions to dismiss the above-entitled actions on the grounds of failure to state a claim upon which relief can be granted. Rule 12(b)(6), Federal Rules of Civil Procedure. The basis of defendants' motions is that the cause of action herein invoked does not exist in Nebraska, either at common law or pursuant to statute.

The allegations are that on March 2, 1970, plaintiffs admitted their son, Lonnie Leroy Owens, Jr., to Childrens Memorial Hospital, Omaha, Nebraska, the defendant, and that their son remained under care and treatment of this hospital until he expired on April 2, 1970. The plaintiffs allege that Childrens Memorial Hospital, by and through its nurses, interns, physicians, agents and employees, together with defendants A. J. Lombardo, M. D., and Delbert D. Neis, M. D., negligently failed to properly diagnose, treat and care for their son by failure to employ ordinary skill and diligence and by failure to apply available methods of diagnosis ordinarily used by hospitals and physicians of ordinary skill and learning. Plaintiffs allege that they were in close proximity to their son throughout the period of his hospitalization, spending many hours at the hospital and personally witnessing the alleged negligence and malpractice of the defendants and the physical and mental suffering of their son. Plaintiffs allege that as a direct and proximate result of the defendants' negligence, they suffered, and continue to suffer, physical and mental anguish, great emotional disturbance, shock, and injury to their nervous systems, all of the injuries being of a permanent and continuing nature.

The defendants base the motions to dismiss this matter on primarily three grounds: (1) the Nebraska Wrongful Death Act, Section 30-809 et seq., R.R.S.1943, does not allow the recovery of damages for the mental anguish and suffering of the deceased child's parents; (2) the plaintiffs lack legal capacity under said Act to sue defendants in this matter; and (3) the cause of action upon which the plaintiffs base their claim is not allowed in the State of Nebraska.

As to defendants' first ground for dismissal, the Court agrees that un-

der Nebraska's Wrongful Death Act, the elements of pain, anguish, loss of companionship, and other mental sufferings of the deceased's beneficiaries are not recoverable. The loss under that statute speaks generally to a pecuniary loss as the Nebraska law abundantly reflects. Ensor v. Compton, 110 Neb. 522, 194 N.W. 458 (1923); Elliot v. City of University Place, 102 Neb. 273, 166 N. W. 621 (1918); Mabe v. Gross, 167 Neb. 593, 94 N.W.2d 12 (1959). What defendants' position fails to consider, however, is that the above "pecuniary loss" limitation is one associated with actions brought under the Wrongful Death Act (hereinafter referred to as the "Act") and the plaintiffs sue, not pursuant to this Act, but rather under general tort law as a separate cause of action on their own behalf. The fact that plaintiffs are attempting to do indirectly what the law forbids them to do directly may be of serious import. In addition, the law forbidding recovery for such mental distress under the Act may be of benefit in ultimately determining the Nebraska Court's receptiveness to plaintiffs' cause of action in this case. See, *infra*. However, this particular objection lacks vitality in light of the above distinction.

■ Secondly, defendants maintain that plaintiffs lack the legal capacity to sue in this action. The objection is based on the requirement, under the Act, that only the "personal representative" of the deceased may maintain a suit to recover for the death of the deceased. Again, the defendants fail to recognize that this objection is without application in the absence of the suit being brought under the Act. Granted, if such were the case, a dismissal or leave to amend would be in order, as to the mother's cause of action as she has not been so appointed. Russell v. New Amsterdam Casualty Company, 303 F.2d 674 (8 Cir., 1962). However, as stated in response to defendants' first objection, the plaintiffs in this matter are not proceeding under the Nebraska Wrongful Death Act, but have instituted an action independent of that Act, for their own suffering and injury allegedly incurred as the proximate result of the defendants' negligence. In such case, the Wrongful Death Act is of no consequence—it is the parents' cause of action, not that of the deceased child.

■ Defendants' third and most ominous ground for their motion to dismiss, is that Nebraska law does not allow recovery in the present situation. The issue thus presented is whether, under the applicable law, the father and mother of a deceased child should be allowed recovery for mental and emotional disturbance, resulting in physical injuries suffered as a result of their witnessing the mental and physical pain and suffering of their hospitalized child allegedly caused by the malpractice of the defendants. To determine this issue, Nebraska law must be considered. Erie Railroad Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Supreme Court of Nebraska has never been presented with the precise issue now before this Court.

The question presented here has been the subject of not a few interesting cases and articles. In the annotation found at 29 A.L.R.3d 1337, the text states:

"In determining this question, the courts have expressed several views, ranging from a traditional view that such damages are generally not recoverable, to the view that such damages are recoverable if the plaintiff's emotional disturbance was reasonably foreseeable; . . . " *id* at 1345.

Within the extremes mentioned in the foregoing statement are numerous qualifications and limitations representing gradual and marked departures from the traditional view of non-recovery.

In support of their contention that Nebraska does not recognize the present cause of action, the defendants direct this Court to the cases holding that in the absence of contemporaneous physi-

cal impact, recovery is denied for mental anguish and suffering caused by the witnessing of the injury of another due to the ordinary negligence of the defendant.

Although there are courts that have so held, generally their finding is based on the rule that a contemporaneous impact must accompany the negligence of the defendant before recovery is allowed in *any* case. See Beaty v. Buckeye Fabric Finishing Co., 179 F.Supp. 688 (D.Ark.1959); Preece v. Bauer, 143 F.Supp. 804 (D.Idaho, 1956); Knaub v. Gotwalt, 422 Pa. 267, 220 A.2d 646 (1966), overruled as to "impact doctrine"; Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84.

■ The "impact" rule has been abrogated in Nebraska as to actions by plaintiffs to recover damages for physical injuries resulting from their own fear or fright which was negligently induced. Hanford v. Omaha & Council Bluffs Street R. Co., 113 Neb. 423, 203 N.W. 643 (1925); Netusil v. Novak, 120 Neb. 751, 235 N.W. 335 (1931); Rasmussen v. Benson, 133 Neb. 449, 275 N. W. 674 (1937), rehearing denied 135 Neb. 232, 280 N.W. 890 (1938).

Although the *Hanford* and *Netusil* cases were concerned more with the issue of recovery for physical injuries due to mental suffering than with the "impact" rule, they certainly provided a sound basis for the Court's specific abrogation of the "impact" rule in Rasmussen v. Benson, *supra.* In that case involving a farmer's physical degeneration and ultimate death from the emotional upset due to defendant's negligently selling him poison bran which he fed to his dairy herd, the Court expressly declared that the requirement of a physical impact was no longer viable in Nebraska after the *Hanford* and *Netusil* cases.

Two questions seem to arise due to the present Nebraska rule of "no impact:" (1) What type of physical injuries are required to follow the emotional disturbance to allow recovery; and (2) What effect does the rule that one may recover for an injury resulting from emotional disturbance caused, without impact, by the negligent act directed *to him,* have on the allowance of such recovery for injury resulting from fear or shock at the peril *of another.* Both of these questions are relevant to the disposition of the matters before this Court.

■ As to the first question, it is clear that, even though Nebraska has abrogated the "impact" rule, there is still a requirement that some type of "physical injury" result from the negligently inflicted emotional suffering. Nebraska law still does not allow recovery without "impact" for mental anguish alone, unless caused by a wilful, active or wanton act on the part of the defendant, such denial based on the intangible nature of mental suffering. *Hanford, supra;* Kurpgeweit v. Kirby, 88 Neb. 72, 129 N.W. 177 (1910); La-Salle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424 (1934). The plaintiffs base their causes of action on negligence, not on an intentional act. Therefore, a "physical injury", as that term applies, must be found before the necessity of deciding the second issue arises.

The *Hanford* case gives this Court some flavoring of what a "physical injury" must entail for the purposes of applying this rule. In framing the issue in that case, the Court referred to such elements as ". . . nervous prostration and its attendant ills . .". *id.* 113 Neb. at 427, 203 N.W. at 645.

In *Hanford,* the "physical injury" was a miscarriage; in the *Rasmussen* case, it was a decompensated heart and ultimate death; in *Netusil,* the injury was what the court referred to as "nervous prostration." The plaintiffs presently

allege "severe excruciating physical pain and mental anguish" and "shock and injury to his (her) nervous system." In the case of Penick v. Mirro, 189 F. Supp. 947 (E.D.Va.1960), the court, applying Virginia law, found that, although Virginia law did not require impact, there must be a physical damage of some type, unless the act was intentional or wanton. As to this requirement, the court said:

> "But there must be a suffering of greater substance than a pure, isolated mental anguish, such as fright, anxiety or apprehensiveness." *id* at 949.

In Petition of United States, 418 F. 2d 264 (1 Cir. 1969), the Circuit Court of Appeals was faced with a similar question. They stated:

> "The term 'physical' is not used in its ordinary sense for purposes of applying the 'physical consequences' rule. Rather, the word is used to indicate that the condition or illness for which recovery is sought must be one susceptible of objective determination. Hence, a definite nervous disorder is a 'physical injury' sufficient to support an action for damages for negligence. Espinosa v. Beverly Hospital, 114 Cal.App.2d 232, 249 P.2d 843 (1953); Bowman v. Williams, 164 Md. 397, 165 A. 182 (1933); Savard v. Cody Chevrolet, Inc., 126 Vt. 405, 234 A.2d 656 (1967)."

Whether the plaintiffs have sustained a "definite nervous disorder" or "pure isolated mental anguish" has not yet been proven to this Court. Even assuming that plaintiffs can prove that a sufficient "physical injury" has resulted from emotional disturbance and mental anguish, the question remains: Would the highest Court of Nebraska extend recovery to them, in the absence of impact or some other objective determinable situation, for incurring injuries from witnessing the suffering of their child, rather than from their own peril

or fear for themselves? Granted, the Nebraska law does not require "impact" any longer. However, the above rules generally apply only when the plaintiff has been the direct object of the defendant's negligent acts. That is not the case before us. The New York Court, in the case of Battalla v. State, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961), held that a contemporaneous physical injury or impact was no longer required for a person to recover for the consequences of emotional shock and fright caused by a defendant's negligence. This is similar to Nebraska's abrogation of the "impact" rule in *Hanford* and *Rasmussen*. In Berg v. Baum, 224 N.Y.S.2d 974 (1962, Sup.), the Court, recognizing that a physical impact was no longer required after *Battalla*, in such circumstances where the plaintiff is put in fear or fright at his own peril, refused to extend the abrogation of the impact doctrine to those instances where one suffered such injuries for fear or emotional disturbances from the peril of a third person. See also Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969) where New York again recognized the lack of necessity for a contemporaneous physical impact under their law, but refused to extend recovery to the mother of a child who suffered serious injuries in an automobile accident where the mother herself was not put in fear for her own peril, nor did she sustain contemporaneous physical impact. As stated in the case of Waube v. Warrington, 216 Wis. 603, 258 N.W. 497 (1938), a leading authority in this area:

> "It is one thing to say that as to those who are put in peril of physical impact, impact is immaterial if physical injury is caused by shock arising from the peril. It is the foundation of cases holding to this liberal ruling that the person affrighted or sustaining shock was actually put in peril of physical impact, and under these conditions it was considered immaterial that the physical impact did not ma-

terialize. It is quite another thing to say that those who are out of the field of physical danger through impact shall have a legally protected right to be free from emotional distress occasioned by the peril of others, when that distress results in physical impairment. *Id.* at 612–613, 258 N.W. 497.

From the foregoing analysis, it would appear that the Nebraska Supreme Court would not necessarily abrogate the impact requirement in this case merely because it has abrogated the impact rule as to those situations where the plaintiff has been directly imperiled by the negligent act. However, even if the Court elected to make some departure from the traditional doctrine of nonrecovery in such cases by refusing to require "impact" even as to witnessing third parties' right to recover as it has previously done for the party actually imperiled, this Court is hesitant to speculate that the Nebraska Court would not limit such recovery in some other manner. Of those courts dealing with this issue (even those which no longer require contemporaneous impact on the witnessing third party), it has generally been intimated that recovery should be limited by at least requiring the plaintiff to have been within the "zone of danger" or actually put in fear for his own safety. See Amaya v. Home Ice, Fuel & Supply Co., 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513 (1963), ovrld. in part, Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316 (1968); Hopper v. United States, 244 F.Supp. 314 (D.Colo.1965) (applying Colorado law); Cosgrove v. Beymer, 244 F.Supp. 824 (D.Del.1955) (applying Delaware law); generally, Restatement Torts (Second), §§ 313, 436.

Plaintiff argues that the Nebraska Supreme Court has already dealt with this specific issue in the *Rasmussen* case, *supra.* There, plaintiff was a farmer who purchased bran at an auction believing it to be of a type he could feed to his dairy herd, there being no indication to the contrary imprinted on or attached to the sack in which it was purchased. After feeding his dairy cattle the bran, a number of the cattle died and the remainder became quite sick. Concerned for the customers to whom he had already delivered the milk which had come from the sick animals, and depressed and heartbroken from the loss of his entire dairy business, the farmer suffered a decompensated heart and ultimately died, subsequent to bringing suit against the seller of the bran. In the action, which continued after his death, the court found the defendant negligent and allowed recovery for the physical consequence of his emotional disturbances, citing the *Netusil* and *Hanford* decisions as settling the question of abrogation of the "impact" rule in Nebraska. The Court reiterated the rule that recovery for worry alone was not allowed—there must be a definite physical injury as a result of the emotional disturbance. This Court believes that a narrow reading of *Rasmussen* is in order. The case obviously stands for the official interment of the impact doctrine in Nebraska. However, as pointed out previously, it need not follow that that doctrine is, thereby, abrogated as to witnessing third parties. The *Rasmussen* case, read broadly, arguably deals with a situation analogous to the one before us, but is distinguishable on the basis that the plaintiff therein suffered, not as a result of the direct witnessing of negligence to another person, but rather at his own loss of his dairy business which represented his total life savings and energy. It is not the facetious difference between cows and a child which presents the distinguishing factor, but rather the fact that *Rasmussen* did not suffer physical injury as a result of witnessing the negligent action towards another person but suffered as a result of the negligence directed toward his property. The Court was overly cautious in affirming the jury verdict in *Rasmussen*: "In order that it may not be misunderstood, in this case the deceased was confronted with a series of disturbing facts." 135 Neb. at 238, 280 N.W. at

892. Again, the court cautioned: "This case can be made more difficult and the opinion seem to reach the wrong conclusion by a misconception of the facts in the case." *Id.* at 239, 280 N.W. at 893. Interesting enough, this Court has not found *Rasmussen* cited in any Nebraska case since the opinions came down in 1937 (original) and 1938 (on motion for rehearing). If the law of Nebraska was as plaintiffs ask this Court to read *Rasmussen*, the absence of its occasional appearance seems anomalous.

■■ In light of the weight of authority denying recovery, or at least limiting it to cases of impact, or requiring that plaintiff be within the zone of physical danger, or that he fear for his own safety (see generally 29 A.L.R.3d 1337; Restatement of Torts (Second), §§ 313, 436), this Court is not sufficiently convinced that either *Rasmussen* or the recent case of Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) (the court there essentially eliminated all tests except that of foreseeability), would prompt the Nebraska Supreme Court to allow plaintiffs' recovery in the situation presented herein. The Nebraska Court consistently holds that parents may not recover for mental anguish or suffering caused them by the death of their child, under the Wrongful Death Act. Johnson County v. Carmen, 71 Neb. 682, 99 N.W. 502 (1904); Ensor v. Compton, *supra*; Elliott v. City of University Place, *supra*. Recovery for the mental anguish of witnessing the suffering of another is also denied as an element of damages in a libel action. Dennison v. Daily News Publishing Co., 82 Neb. 675, 118 N.W. 568 (1908). The great weight of American authority, in addition to the reluctance of the Nebraska Court to allow recovery in the above-mentioned situations, leads this Court to the conclusion that plaintiffs cannot prevail in their resistance to the present motion. Accordingly,

It is ordered that defendants' motions to dismiss should be and hereby are, sustained.