No. 16,232.

GOLDBLATT *v*. CHASE

(216 P. [2d] 435)

Decided March 6, 1950.

Mr. ISAAC MELLMAN, for plaintiff in error.

Messrs. AMMONS & BROMLEY, Mr. ROBERT T. KINGSLEY, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

LYNN CHASE, the defendant in error, sued Leo Goldblatt, plaintiff in error, to recover damages for personal

injuries resulting from an alleged assault and battery. On a favorable jury verdict, December 3, 1948, he was awarded judgment for the sum of $2,952.52, actual damages, and $750 exemplary damages. On the motion for a new trial, the judgment for exemplary damages was set aside and the motion otherwise denied.

Error is specified to the judgment largely on the refusal of the court to give defendant's tendered instruction No. 1; error in giving instructions Nos. 5, 6, 7 and 8; and on the jury being instructed on exemplary damages, for the reason that the pleading and the evidence did not justify such instruction.

Both plaintiff and defendant testified in their own behalf, and one eyewitness, Bogle, a streetcar operator, testified as witness for plaintiff, as also did Dr. Joseph A. Leonard, who examined plaintiff, on December 6, 1947, after the assault and battery occurring November 22, 1946.

Plaintiff alleged that about 3:15 P.M., he was standing on the sidewalk in front of 1221 Larimer street, Denver, when the defendant maliciously and with wanton and reckless disregard of his rights and feelings, struck him in the face and head, knocked him down and kicked him about the head, face and body, and knocked him off the curb into the path of an oncoming streetcar, which struck plaintiff; that he incurred a rupture, fractured ribs, fractured sacrum, concussion and other contusions about his face and body; that he incurred doctor bills in the sum of $300 and lost wages in the amount of $500. He sought judgment in the sum of $5,000 damages and $2,500 exemplary damages.

Defendant answered, denying that any injuries or damages received by plaintiff were the result of malicious or wanton acts on his part, and alleged that if the plaintiff incurred damages or injuries as set out in the complaint, they were the result of being hit by a streetcar and not through any fault or negligence of the defendant.

Francis Bogle, witness called for plaintiff, testified that he was an employee of the Denver Tramway Company; was on duty operating a streetcar on Larimer street; and saw the plaintiff and defendant scuffling on the sidewalk about eighty or ninety feet in front of him; that he saw the plaintiff turn and run two auto lengths toward him and toward the edge of the curb, and that while plaintiff was running, he saw defendant kick plaintiff in the back, knocking him out into the street landing on his shoulder about a foot or so from the rail of the streetcar track; that he was only about eight feet away and applied the brakes, but before he could stop, the iron guard on the step of the street car hit plaintiff on the head and rolled him over; that he called Fred Staab, a city detective who was on the car, and they both got out and examined Chase, the plaintiff; he was "knocked out" and they straightened him out and carried him over to the curbing where plaintiff was not able to sit up for two or three minutes; that he did not notice any marks or scars on him, but knew that he was badly battered up; he could not say whether he was drunk or sober, but that he and the detective smelled of his breath and could not detect any odor of alcohol.

Chase, the plaintiff, testified that he was sixty-three years old and was a roofer by trade, but had not been so engaged since November of 1946; that at about 3:00 o'clock on the date above mentioned, he stepped into a restaurant at 12th and Larimer street to have a sandwich and a glass of beer; that he had only one beer and had nothing to drink that morning; that he does not drink and never takes a drink with anybody; that he had known the defendant for about a year and had purchased a carburetor jet from him two or three weeks before for fifty cents; that he did not pay for it and took it back; that defendant demanded the fifty cents and after some argument threw the jet down on the sidewalk and plaintiff picked it up and walked away; that

in the meantime, defendant had called him a vile name and told him that if he did not pay for it, he would kill him. This was about three weeks before the assault here involved; that after he had the sandwich and beer and started out of the restaurant, the defendant came from his place of business across the street and again demanded the fifty cents. Plaintiff turned away and started to take the fifty cents out of a purse when he was struck down by a blow in the face by the defendant; that he never struck the defendant only to guard off his blows; that he got up and started walking away and went as far as a telephone pole and stopped when he was tackled again; something struck him in the back which carried him out into the street. The defendant kicked him in the right ride; that he was under the streetcar and something hit him, and the next thing he remembers was waking up in the hospital on Sunday. He also testified as to his injuries and the monies expended for treatments; denied that he flipped a cigarette into defendant's face; and said that he was not under the influence of liquor at the time.

Goldblatt, the defendant, testified that he was fifty-six years old and had had heart trouble since 1934 and could not do heavy work; that he knew plaintiff by sight; that he called to buy something once or twice when defendant was in the automobile wrecking business; that shortly before the date of the trouble herein mentioned, he saw plaintiff when he came in to borrow a half dollar to buy some gas; that he met the plaintiff as he was coming out of the tavern across the street and asked him about the half dollar; that plaintiff was smoking a cigarette which he took out of his mouth and threw it in defendant's face and said, "You are paid, you so and so;" that defendant slapped plaintiff in the face and they started to scuffle; plaintiff backed up by the curb and stumbled into the car; that he did not kick him or push him. That plaintiff was fighting the defendant and struck at his hands; that plaintiff was

drunk; that he did not chase him; and that he never kicked him in any manner.

Dr. Joseph Leonard, witness for plaintiff, testified that he examined plaintiff on December 6, 1947; that his examination disclosed a slight amount of trauma and symptoms of fracture; that plaintiff made no complaint about the sacrum; that there was a marked discoloration of the entire left groin area more than the size of a half dollar and the examination showed a hernia on the right side; that he was not concerned with plaintiff's hernia at that time; that he taped his chest and gave him pills for constipation; that he made no note of cuts or bruises on plaintiff's head.

Exhibit 1 is a copy of the Denver General Hospital records showing diagnosis, X-ray laboratory report, history, general and medical report, and is as follows:

"Rt 7th rib in auxillary line
Lungs: clear no P & P
Heart: Sp 100/60 P 80 regular
Abdomen: neg
Genitalia: neg
Extremities: abrasion 1 thigh
Neurological: neg
"Inp: 1. Chronic alcholism Korsonoff's phychosis
       2. Fract rt 7th rib
       3. Multiple abrasions
"11/25 Clear mentally — ribs taped — many bruises all over
       X-ray shows fract sacrum
"12/1/46 Well
          Discharge note: This 60 yr. old white male was admitted on 11/22/46 — diagnosis acute alcholism. Fracture rt ribs and multiple contusions. Improved on rest. Discharged this date.

                    "Diagnosis
"1. Acute alcholism

2. Fracture rt ribs
3. Fracture sacrum
4. Multiple contusions — abrasions.

"X-Ray Laboratory Report

"There are several rib fractures on the anterior side of the lower right ribs.

"Dr. Crosby/eo

"There is no evidence of fracture of the skull.

"There is a fissure line crossing the upper border of the sacrum from the center to the left sacro-iliac articulation which seems conclusive for fracture and is probably shown in one of the lateral views. There is no displacement.

"Patient refused to sign Certificate of Financial Inability.

"Note: Pt. apparently intoxicated and refused to sign.

———————

"History Sheet

"No. 233138

Name: Lynn Chase — 1466 Lipan St.

Age: 60 Sex: M Race: W

"11/22/46 — Admission Note:

"This 60 yr. old white male is admitted confused in acute alcholic state. Slightly disoriented and hallucinating freely. Pt. talks to his relatives when theyre not here. Evidently hearing voices. Pt. is unable to remember past events and has definite dissatisfaction of time relationships. Doesn't remember how he got hurt but does remember having been on a big drunk. Says he drinks infrequently and a big 'spree' when he does. Also states that 'I'm a vet—all the vets know me—and I have these blackouts.' 'Have had them ever since the last war—you know what the score is.'

Head: Abrasion rt eyebrow and nose

Pupils: Oval and read to L

Strong alcholic odor on breath

Chest: Tenderness and deformity of rt 7th rib in auxillary line

"Provisional diagnosis: Possible fractured right ribs —abrasion of nose and over right eye. Possible head injury.

"Veteran—Yes

World War 1 pension

"Admitted Denver General Hospital 11/22/46 — 3:29 P. M.

"Jobe—Staff Physician

Scott—House Physician

Discharging physician: R. G. Williams — Scott

"Transferred to County Jail on termination of treatment.

"Medical Report:

"Tram — Ped. acc

"Strong odor of alchol on breath

Abrasion rt eye brow and nose

Somewhat confused, belligerent and talkative.

Pain and tenderness rt. lower ribs

"Imp: 1. Poss head injury

2. Fr. ribs — rt lower

"Adm: 48 hr.

"LLT Good, Attending Physician

E. Gilliam, Attending Nurse"

The testimony of the participants in the alleged assault is in sharp conflict, and that of plaintiff's witness Bogle was in conflict with plaintiff's testimony in some particulars. It is to be noted from the doctor's examination, that there is no permanent injury to plaintiff that is a result of this occurrence.

██ ██ Of course, we are again confronted with the oft repeated request to set aside a verdict seemingly based on conflicting testimony, which we would not be inclined to do if we were satisfied that the jury had been properly instructed.

Over the objections of counsel for defendant, the court gave Instruction No. 5, which is as follows: "The jury is instructed that an assault and battery consists in an injury actually done to the person of another, in

an angry or revengful, rude or insolent manner. Any unlawful beating of another, however slight, is an assault and battery; and the degree of bodily pain and injury, if the assault and battery are proved, is only important as affecting the measure of damages."

This instruction is not the statutory definition of assault and battery. Section 66, chapter 48, '35 C.S.A., is as follows: "An assault is an unlawful attempt coupled with a present ability to commit a violent injury on the person of another." Section 1, chapter 90, S. L. '43, reads: "Assault and battery is the unlawful beating of another. Every person convicted of assault, or of assault and battery, shall be punished * * *." The instruction as given states that an assault and battery consists of an injury done in anger or in a revengeful, rude or insolent manner, and that any unlawful beating of another is an assault and battery. There is no instruction as to what an unlawful beating might consist. The jury was not told what could or could not be deemed unlawful.

Counsel for defendant tendered the following instruction: "The court instructs the jury that an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another, and a battery is the actual doing of physical injury as a result of an assault. Any injury to the person of another by means of an assault and battery, done without justification or excuse, is wrongful and unlawful and furnishes a basis for recovery of damages therefor." This tendered instruction stated proper definitions of assault and battery, is in the general terms of the recognized standard definition, it accords with defendant's theory of defense as shown by the evidence and should have been given instead of instruction No. 5.

Instruction No. 6 as given by the court is: "No provocative act or conduct, if unaccompanied by any overt act of hostility, will justify an assault, no matter how offensive or exasperating, nor how much they may be

calculated to excite or irritate." In this instruction, there is no direction to the jury as to what a provocative or an overt act of hostility might be. It is the equivalent of saying that there should be a combination of a provocative act and an actual act of hostility before there would be any justification on the part of the defendant. This instruction is lacking in that the jury was not told that mere words alone, unless accompanied by an actual act of hostility would not justify an assault. The court should also have instructed the jury that a provocative act or an act of hostility would provide justification.

There is evidence before the jury that defendant claimed provocation on account of the act of hostility on the part of the plaintiff when he testified that the plaintiff threw a cigarette in his face, and this testimony required an instruction in the nature of instruction No. 1 as tendered by the defendant. Provocation, if recent in point of time, is a defense, at least as to mitigation of damages, and it is for the jury to determine the sufficiency thereof under proper instructions.

By instruction No. 7, the jury was instructed, " * * * and if you find further that in committing the acts complained of the defendant was guilty of a wanton and reckless disregard of the rights and safety of the plaintiff, then and in that event you may assess exemplary damages in favor of the plaintiff and against the defendant in such sum as you may deem proper, in any event not to exceed the sum of $2,500.00."

This instruction does not follow the rule on exemplary damages, which is Rule 101 (d) R.C.P. Colo., and is: " * * * where the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings * * *." As given, the instruction could be considered by the jury as an intimation on the part of the court that the defendant was guilty of committing the acts complained of.

This instruction was given over the strong protest of counsel for defendant on the ground that there was no evidence to justify the giving of the instruction, and also as to the form of instruction given by the court. It is true that on motion for a new trial, the court set aside the verdict of $750 for exemplary damages; however, counsel for defendant rightfully contends that by virtue of wrongful submission of the question of exemplary damages to the jury by the court, the jury could easily be influenced and include some punishment along with the actual damage. They certainly could have been misled to believe by this action of the court that the element of wantonness and recklessness existed in the case. It is evident that the court considered the error of this instruction under the circumstances of the case, when it set aside the verdict thereon.

In accordance with the views herein expressed, we cannot say that defendant was not prejudiced herein and for that reason the judgment is reversed and the cause remanded for trial.

Judgment reversed.

MR. JUSTICE JACKSON and MR. JUSTICE HAYS dissent.