## No. 19,394.

DOROTHY GRANT *v.* JUANITA GWYN.
365 P. [2d] 256)

Decided September 25, 1961.  Rehearing denied October 23, 1961.

Mr. BERNARD E. ENGLER, Mrs. LUELLA COTTLE PRESTON, for plaintiff in error.

Mr. CHARLES E. BENNETT, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to the parties by name, plaintiff in error as Grant and defendant in error as Gwyn.

The complaint filed by Gwyn contained allegations that Grant "in a cruel and vicious manner assaulted" her, broke her nose and inflicted serious physical injuries to her face, head and body, resulting in damages allegedly sustained in the amount of $10,200.00. Exemplary damages were claimed in the amount of $10,000.00 and Gwyn sought to have execution against the body of Grant.

Grant, by answer, pleaded a general denial and affirmatively alleged that she acted in the necessary defense of herself and property at all times mentioned in the complaint. By counter claim she alleged first, that in October 1955, five months prior to the incident complained of, Gwyn and a man represented to be her husband rented an apartment from her and thereafter occupied the same until the time of the events referred to in the complaint; that she questioned Gwyn concerning her marital status and the latter thereupon threatened to sue Grant for questioning such relationship; that Gwyn and her "alleged husband" created disturbances "and otherwise annoying and disturbing the defendant and her other tenants; that the defendant was damaged in her personal and business reputation, suffered shock and mental distress, whereupon defendant became ill." On this asserted claim Grant sought $15,000.00 in damages.

As a second counterclaim Grant alleged that Gwyn

assaulted her "in a cruel and vicious manner," for which she prayed $5,000.00 damages, exemplary damages for a like sum, and execution against the body of Gwyn.

After the jury was selected, on motion of counsel for Gwyn, the trial court dismissed the first claim set forth in the counterclaim of Grant, holding that the allegations of that count did not state a claim upon which relief could be granted.

At the conclusion of all the evidence counsel for Gwyn moved to dismiss the second claim set forth in Grant's counterclaim. This motion was granted, the trial court observing: "As the Court recalls, there was no mention made of the counter claim in the defendant's opening statement, nor has there been any testimony relative thereto. The motion to dismiss the counter claim is granted."

The remaining issues were tried to a jury which returned a verdict in favor of Gwyn awarding damages in the sum of $5,200.00 and exemplary damages in the amount of $2,000.00. The following question: "Were the acts in committing the tort complained of attended by a wilfull and wanton disregard for the rights and safety of the plaintiff?" was answered in the affirmative by the jury.

Judgment entered on the verdict and the court further adjudged that execution should issue against the body of Grant, " * * * and that in case she shall fail to satisfy the said judgment herein," she be committed to jail for the term of six months or until the judgment is paid.

After the verdict of the jury was returned and judgment had entered, counsel for Grant filed a "Motion to Set Aside Body Judgment" in which it was asserted that Grant " * * * had been previously convicted in a criminal prosecution for the same wrong * * *." Attached to the motion was a certified copy of a record of the municipal court of Denver from which it appears that Grant was charged with violation of two ordinances of the City and

County of Denver identified by number and as "disturbance" and "assault." She entered a plea of not guilty and was assessed a fine of $50.00 on each count. The fines were not paid, however, each being suspended. In denying this motion the trial court said:

"THE COURT: This matter comes up on the Motion to Set Aside the Body Judgment, which the Court has heretofore entered based upon the special verdict returned by the Jury showing that the assault was *intended* by wilful and wanton disregard of the rights of the plaintiff, which under 77-9-3 of the Revised Statutes of 1953 states that the plaintiff is entitled to a body judgment.

"No where in the pleadings, and no where during the course of the trial, nor in the testimony, or the arguments of counsel, nor was any objection made to the submission to the Jury of this particular question. At the time the instructions were submitted there was some question or objection to the instructions, but not on the grounds that the party had been previously convicted. If the defendant had been convicted previously of an offense, it would have been useless and a futile proceedings to submit that matter to the jury, because ordinarily we don't submit questions to the jury for academic answers. It is for some purpose. It was not until after the Jury had made their return, and at the time that the Court was entering judgment in the matter that it was brought up about this conviction. Now, possibly if there was an actual conviction in a criminal prosecution, possibly it wouldn't make any difference as counsel has argued; possibly execution could not issue in view of the statute which says 'in no case can an execution issue against the body of a person when the person has been convicted in a criminal prosecution for the same wrong,' but then the question comes down in this case, 'Was this a criminal proceedings, but does it sufficiently appear to the Court that it was a criminal prosecution for the same wrong?'

"Under the Merris case, if this was a crime in the Municipal Court, the City and County of Denver had no jurisdiction of the case, has no jurisdiction to try a criminal offense, only to try Ordinance violation, so consequently if this woman was convicted of anything, it is a violation of a City Ordinance, and not the violation of a crime as a result of a criminal prosecution.

"Therefore, the Court rules that execution may issue in this case. That a Motion to Set Aside the Body Judgment will be denied."

As grounds for reversal counsel for Grant presents argument under eight separate captions, four of which are based on objections to instructions given, and refusal to give instructions tendered. Two are directed to alleged error of the court in dismissing the counterclaim. The remaining points are directed to denial of the motion to vacate the body judgment, and denial of the motion for new trial.

We consider first the question of whether the court erred in dismissing the two claims incorporated in the counterclaim of Grant. With reference to the first claim the trial court stated, in denying the motion for a new trial: " * * * there is no claim stated. There never was any breath of life in that claim." In essence, it is a claim for damages arising from alleged emotional disturbance resulting from alleged threats and "annoying" conduct attributed to Gwyn which caused "mental distress" in the mind of Grant, over a period of time (not specified) prior to the incident of March 21, 1956, which forms the basis of Gwyn's complaint. Counsel for Grant has cited no case which holds that damages for such an emotional disturbance can be adjudicated. The trial court did not err in dismissing that claim.

With reference to the dismissal of the second counterclaim, all the evidence had been introduced at the time the order of dismissal was entered. There was no evidence that Grant suffered any damage. The claim as

stated amounted to no more than a repetition of the allegations of the answer in which Grant relied upon self defense and defense of her property. All of the testimony which might have been considered in connection with the said claim was considered and rejected by the jury upon the issue of defense of person and property. Had the jury found the issues on that question in favor of Grant she might have been entitled to nominal damages, even though no proof of loss was offered; but the jury resolved the issue of defense of person or property against her and in so doing resolved against her the ground upon which her claim for damages was based. Under these circumstances the failure of the court to submit the question of nominal damages to the jury could not have resulted in prejudice to the rights of Grant.

Over objection of counsel for Grant the court gave Instruction No. 10 which reads as follows:

"You are instructed that, if your verdict is for the plaintiff, you may, in addition to the actual damage you find was sustained by plaintiff award her reasonable exemplary damages, if you further find from the evidence that the defendant, in committing the acts complained of, was guilty of malice, insult or wanton and reckless disregard of plaintiff's rights and feelings; and if you find that exemplary damages should be awarded, you must determine the amount of such exemplary damages, not to exceed, however, the sum of $10,000.00."

The specific objection made to the giving of this instruction was as follows:

"Defendant objects to Instruction No. 10, being an instruction as to exemplary damages on the grounds that the instruction could mislead the Jury and be considered as a direction of the Court that exemplary damages should be given."

In this court counsel for Grant asserts that the following words of the instruction "if you further find from

the evidence that the defendant, *in committing the acts complained of,* was guilty of malice, insult \* \* \* " could well have been construed by the jury as an intimation on the part of the trial court that Grant was guilty of the acts complained of by Gwyn. Counsel relies on *Goldblatt v. Chase,* 121 Colo. 355, 216 P. (2d) 435, in which the trial court erroneously submitted to the jury the issue of exemplary damages, and upon reconsideration set aside the verdict with respect thereto. The opinion in that case contains the following statement:

" \* \* \* defendant rightfully contends that by virtue of wrongful submission of the question of exemplary damages to the jury by the court, the jury could easily be influenced and include some punishment along with the actual damage. They certainly could have been misled to believe by this action of the court that the element of wantonness and recklessness existed in the case. \* \* \* "

In the instant case there can be no question of the elements of wantonness and recklessness. The testimony of Gwyn and her witnesses definitely required the submission of the matter of exemplary damages to the jury. Instruction No. 10 by its terms requires a finding by the jury that Gwyn is entitled to recover damages before any consideration should be given to the question of exemplary damages. This is accomplished by the first statement in the instruction, to-wit: "You are instructed that, *if your verdict is for the plaintiff* \* \* \*." The argument that the jury construed the instruction as an intimation by the court that the defendant was guilty cannot be upheld for the further reason that the trial court expressly instructed the jury to the contrary in Instruction No. 15. From that instruction we quote the following:

"The court did not by any words uttered during the trial, and the court does not by these instructions, give or intimate, or wish to be understood by you as giving or intimating, any opinions as to what has or has not

been proven in this case, nor as to what are or are not the facts in the case.

"No single one of these instructions states all the law applicable to the case, but all of these instructions must be taken, read and considered together, as they are connected with and related to each other as a whole."

The court did not err in giving Instruction No. 10.

We have given due consideration to the contentions of counsel for Grant, with relation to the refusal of the trial court to give tendered instructions, and conclude that no error was committed by the trial court in rejecting them. Other instructions given by the court over objection of counsel were proper and no good purpose would be served by lengthening this opinion with a detailed analysis thereof.

We now consider the question of whether the belated showing to the effect that Grant had been "previously convicted for the same wrong" requires that the portion of the judgment authorizing execution against the body be vacated. Rule 101(a), R.C.P. Colo., which deals with the subject of body execution provides in pertinent part that, " * * * in no case shall such execution issue when the defendant shall have been convicted in a criminal prosecution for the same wrong." The rule is silent as to when or how the issue of conviction in a criminal proceeding for the same wrong shall be raised. We hold it sufficient if called to the court's attention at any time before the issuance of such execution, hence in the instant case the question was raised in apt time by the showing made in support of the motion to vacate the judgment for execution against the body of Grant. The action in the municipal court of the City and County of Denver was based upon the "same wrong" of which Gwyn complained. Under the decision of this court in *City of Canon City v. Merris*, 137 Colo. 169, 323 P. (2d) 614, the municipal court proceeding was a "criminal prosecution" within the meaning of Rule 101(a), R.C.P. Colo., in which Grant was convicted. The fact that the

fines assessed against her were suspended is not material.

In so far as the judgment authorizes an execution against the body of Grant, it is reversed; in all other respects it is affirmed.

Mr. Justice Day and Mr. Justice Frantz concur.