[No. B067253. Second Dist., Div. Four. June 23, 1994.]

ROBERT BAROUH, Plaintiff and Appellant, v.
MORTON HABERMAN, Defendant and Respondent.

**COUNSEL**

A. L. Renick for Plaintiff and Appellant.

Waters, McCluskey & Boehle, Wendy A. Tucker and Wayne J. Boehle for Defendant and Respondent.

## OPINION

VOGEL (C. S.), J.—Plaintiff and appellant Robert Barouh brought this action against defendant and respondent Morton Haberman for battery and negligent personal injury. The action was tried to a jury, which found by special verdict that defendant was not negligent (12-0) and that defendant did not commit battery (9-3). Plaintiff appeals from the judgment on the jury verdict, contending the evidence does not support the verdict and the court erred in refusing plaintiff's requested special instructions on battery. Agreeing with the latter contention, we reverse for a new trial.

### FACTS

Plaintiff and defendant were longtime acquaintances. They socialized together in the 1950's when both were single, worked at the same employer in the 1960's, and met again in 1987. At that time both were not working, and they began having breakfast together about twice a week at the Bagel Nosh Restaurant in Beverly Hills. Sometimes they took walks together after breakfast.

Sometime in mid-1989, plaintiff decided to stop attending the breakfast meetings. He testified he felt the parties had run out of things to say to each other, and he became irritated at defendant's attitude and remarks defendant made about plaintiff's marriage. A couple of weeks after plaintiff stopped attending the "breakfast club," defendant called and asked plaintiff to attend one last breakfast. Plaintiff declined. At a chance meeting in a parking lot, defendant again suggested getting together but plaintiff was not interested. On a few occasions, they were in the restaurant at the same time but did not approach each other.

On August 25, 1989, plaintiff was seated in the Bagel Nosh with his cousin Sol Barouh. Defendant entered the restaurant. Defendant walked down the aisle, approached plaintiff from behind, and intentionally made contact with his right hand on the right side of plaintiff's head.

The nature of this contact, on which the action for battery and negligence was based, was the subject of widely conflicting testimony.

According to defendant, it was a "little friendly tap," a "love tap," a friendly gesture with absolutely no force behind it, accompanied by a greeting, " 'Hi, Bob.' "

According to plaintiff, it was a "blow" which immediately left him stunned and dazed. According to eyewitness Sol Barouh, it was a "hard wallop" administered after the greeting, " 'Hi, Bob.' "

Plaintiff immediately cradled his head in his hands with his elbows on the table. He said nothing to anyone and did not respond to Sol's questions, " 'What's the matter? Are you hurt?' "

After a few minutes during which plaintiff continued to cradle his head in dazed silence, plaintiff got up and started pacing on the sidewalk outside the restaurant. He gestured through the window for Sol to come out. He told Sol he was dizzy and that he did not know why defendant hit him. Defendant approached them but plaintiff told defendant to get lost.

Plaintiff testified that although dizzy he was able to drive home. When he arrived home, he began hearing a buzzing sound in his head which he had never experienced before. He lay down on the couch, dazed and confused. The rest of the day the buzzing, or hissing like the sound of an air hose, continued. After it continued a few more days, plaintiff went to a doctor and was told his condition was tinnitus, a condition in which the patient subjectively experiences a buzzing or ringing inside the head which is not occasioned by any outside auditory stimulus.

After his first doctor's appointment, plaintiff contacted defendant and told him about his doctor's bill. Defendant paid the doctor's bill. Twice more, plaintiff presented defendant with doctors' bills, which defendant paid. Defendant testified, "Based on what he told me and by scrutinizing the medical bills I figured I had something to do with that. . . . [¶] I felt as a responsible person and in view of the friendship, etcetera, I wanted to do the right thing."

Plaintiff testified that his condition continued from the day of the incident through the time of trial and had made his life unbearable. The constant sounds in his head made him irritable, anxious, depressed, and unable to cope with ordinary noises in social situations, which seemed to magnify the problem. He had seen numerous specialists and tried various treatments, none of which had given him any relief. The parties presented conflicting expert opinion on whether plaintiff's condition was attributable to defendant's contact with plaintiff's head.

### SUBSTANTIAL EVIDENCE

Plaintiff contends, "The verdict is against the weight of the evidence as a matter of law." This amounts to a contention that there is no substantial

evidence to support a verdict for defendant. Under established standards of appellate review, this contention must be rejected.

The appellate court cannot reweigh the evidence. All conflicts in the evidence and all questions of the credibility of witnesses must be resolved in favor of the verdict. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]; *Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059].)

Plaintiff's contention is all the more remarkable because he had the burden of proof. It was within the jury's prerogative to disbelieve plaintiff and his witnesses, to believe defendant, and to conclude plaintiff had failed to sustain his burden of proof by a preponderance of the evidence. (See *County of Ventura* v. *Marcus* (1983) 139 Cal.App.3d 612, 615-617 [189 Cal.Rptr. 8] [judgment against plaintiff under Code Civ. Proc., § 631.8, based on disbelief of plaintiff's witnesses]; *Greening* v. *General Air-Conditioning Corp.* (1965) 233 Cal.App.2d 545, 550-551 [43 Cal.Rptr. 662] [same].)

Defendant testified the touching was a "love tap" between old friends, with no force behind it. If the jury believed defendant, the jury could reasonably find defendant did not act negligently or beyond consent implied by the circumstances. Plaintiff's contention that the contact must have been harder is based on his own subjective description of his symptoms, which the jury was not required to believe. Plaintiff's contention that the friendship had deteriorated to the point the contact could not have been consensual raises only a question of conflicting evidence and inferences, which was solely for the jury, not this court, to resolve. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

## Instructions on Battery

The trial court instructed the jury on battery in the language of BAJI Nos. 7.50, 7.51 and 7.52.[1]

■ The issue in this case focuses upon the definition of battery in BAJI No. 7.51 as "any intentional, *unlawful* and harmful contact." (Italics added.)

---

[1]BAJI No. 7.50 provided: "A plaintiff who suffered any bodily harm as a legal result of a battery committed upon him by a defendant is entitled to recover damages for such injury from that defendant."

BAJI No. 7.51 provided: "A battery is any intentional, unlawful and harmful contact by one person with the person of another. [¶] The intent necessary to constitute battery is not an intent to cause harm, but an intent to do the act which causes the harm."

BAJI No. 7.52 provided: "A person may expressly or by voluntarily participating in an activity consent to an act which otherwise would be a battery."

Prior to the instructional phase, plaintiff's counsel argued that although BAJI No. 7.51 was correct so far as it went, the jury needed additional instruction on the meaning of the word "unlawful." Plaintiff's counsel requested an additional instruction stating, "A harmful contact intentionally done is the essence of battery. A contact is unlawful if it is unconsented to." This language was taken directly from *Ashcraft* v. *King* (1991) 228 Cal.App.3d 604, 611 [278 Cal.Rptr. 900], which counsel cited to the court. The court refused plaintiff's additional instruction.

BAJI No. 7.51 has been held a correct definition of battery. (*Delia S.* v. *Torres* (1982) 134 Cal.App.3d 471, 480 [184 Cal.Rptr. 787].)[2] An instruction which is correct in general, however, may need clarification in the circumstances of a particular case. In *Delia S.*, that argument was waived by the failure to request a clarifying instruction in the trial court. (*Id.* at p. 481.) Here, plaintiff timely requested a clarifying instruction.

"Unlawful" is a legal term as to which the jury needs guidance from the court. (See *People* v. *Lilliock* (1968) 265 Cal.App.2d 419, 428-429 [71 Cal.Rptr. 434] ["felony"]; *Carl* v. *McDougal* (1919) 43 Cal.App. 279, 281-282 [184 P. 885] ["forgery"].) Upon plaintiff's timely request, the court should have instructed the jury on the meaning of that term as it applied to the circumstances of this case.

Although it is not incorrect to say that battery is an unlawful touching (6 Am.Jur.2d, Assault and Battery, § 5), it is redundant to use "unlawful" in defining battery in a jury instruction, and may be misleading to do so without informing the jury what would make the conduct unlawful. (*Goldblatt* v. *Chase* (1950) 121 Colo. 355 [216 P.2d 435, 439] [instructions referred to battery as an "unlawful beating" but nowhere defined "unlawful"].)

The Restatement Second of Torts does not use the term "unlawful" in its definition of battery.[3] (6 Am.Jur.2d, *supra*, Assault and Battery, § 111.) After the trial of the present action, the BAJI Committee revised BAJI Nos. 7.50 and 7.51. The new instructions also do not use the term "unlawful" in defining the necessary elements of battery. Consistent with the instructions sought by plaintiff in this case, the new version defines battery as "any

---

[2] This BAJI definition is of long standing. Our research traces it back to BAJI No. 231 in the 1967 pocket part to the fourth revised edition, becoming BAJI No. 6.71 in the fifth edition, and BAJI No. 7.51 in the seventh edition.

[3] "An actor is subject to liability to another for battery if [¶] (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [¶] (b) a harmful contact with the person of the other directly or indirectly results." (Rest.2d Torts, § 13.)

intentional, *unconsented*, and harmful [or offensive] contact by one person with another." (BAJI No. 7.50 (1992 rev.), italics added.)[4] In its comment, the BAJI Committee did not cite new California case law but the Restatement.

Worse than mere redundancy is the possibility the jury may be misled by the inclusion of "unlawful" in the instructional definition of battery. Plaintiff's case was not based upon a claim that defendant performed an otherwise unlawful act, such as firing a gun. Defendant contended that the touching was merely a "love tap" between friends, the type of touching which in ordinary society is considered inoffensive and consented to.[5] In this context, the unexplained language of BAJI No. 7.51 created a substantial danger of misleading the jury to believe plaintiff had to prove not only that defendant's conduct was intentional and harmful but also that it was, in some other unexplained way, "unlawful." This is the possibility which plaintiff foresaw and attempted to avoid with a clarifying instruction to inform the jury what was meant by unlawful. Unfortunately, the record shows plaintiff's concern was well founded.

During deliberations the jury specifically asked, "Does a battery have to be comprised of all three parts: intentional, lawful [*sic*] and harmful or can it be any portion thereof?" The court answered this question, "Yes. It's all three parts."

We conclude the trial court's erroneous refusal to give plaintiff's requested instruction resulted in a miscarriage of justice. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 770-771 [206 Cal.Rptr. 354, 686 P.2d 1158].) With the requested instruction, the jury would have understood that in order to show the contact was unlawful, plaintiff only need show it was unconsented. Contrary to defendant's argument, we are not persuaded the jury understood this from the fact the court

---

[4]BAJI No. 7.50 (1992 rev.) reads: "The plaintiff also seeks to recover damages based upon a claim of battery. [¶] A plaintiff who suffers harm or injury as a result of a battery is entitled to recover damages to compensate for such harm or injury. A battery is any intentional, unconsented, and harmful or offensive contact by one person with another. [¶] The essential elements of a claim for battery are: [¶] 1. Defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; [¶] 2. Plaintiff did not consent to the contact; [¶] 3. The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff."

[5]"The usages of decent society determine what is offensive. Thus, as Lord Holt observed, 'the least touching of another in anger' or the laying of hands in a rude or insolent manner may amount to a battery, whereas a touching or other contact in a courteous or merely casual manner for a legitimate purpose or one unavoidably made is no wrong. Thus, it is not a battery to touch another for the purpose of attracting his attention, nor to grasp another by the hand or arm as a gesture of friendship. These are usual and common customs and, therefore, are ordinarily not offensive to a normal person." (1 Harper, James & Gray, The Law of Torts (2d ed. 1986) § 3.2, pp. 269-270, fns. omitted.)

instructed on consent. There was no instruction which linked the word unlawful in BAJI No. 7.51 to the concept of consent in BAJI No. 7.52; that is exactly what plaintiff's proposed instruction was designed to accomplish. The jury's question indicates the jury was in fact bothered by the ambiguity in BAJI No. 7.51, and the court's answer to the question failed to resolve the misleading implication. The jury might have concluded plaintiff had to show defendant's conduct was against the law or even criminal, in order to satisfy plaintiff's burden of proof. In fact, the special verdict form supports that possibility, because the jury on question 3 found "No" to whether defendant committed a battery, and therefore did not answer question 4 which asked whether plaintiff consented to a battery.[6]

Contrary to defendant's contention, the fact that plaintiff's counsel attempted to argue to the jury, "[i]t is unlawful to go around hitting people unless they give you permission to do it," does not show the error was nonprejudicial. Without the requested instruction, counsel lacked support for his argument in the instructions on the law; the jury was told it was the court's function to define the law. (BAJI No. 1.00.)

Defendant erroneously argues the error was nonprejudicial on the ground the "critical issue" was not consent but whether the contact was the legal cause of injury. There was not a general verdict, from which a finding of lack of legal cause or lack of damages might be inferred. There was a special verdict, in which the jury first found "No" to whether defendant committed a battery, and therefore never answered the subsequent special verdict questions on consent, legal cause, and damages.

Plaintiff presented a very strong prima facie case, if believed. According to plaintiff's evidence, including eyewitness corroboration, defendant gave plaintiff a "wallop" on the side of the head, plaintiff immediately suffered symptoms of tinnitus, which he never had before, and defendant acknowledged responsibility for plaintiff's doctor bills. On this record, there is a reasonable probability the jury's special verdict finding no battery was the result of misunderstanding the elements plaintiff had to prove, rather than total rejection of all plaintiff's evidence. Considering (1) the degree of conflict in the evidence, (2) the jury's question about the very issue which plaintiff's requested instruction addressed and the court's response to it, (3) the verdict by the bare number of jurors necessary (nine to three on the

---

[6]The burden is on plaintiff to prove lack of consent. (Use note and com. to BAJI No. 7.50 (1992 rev.), citing *Kritzer* v. *Citron* (1950) 101 Cal.App.2d 33, 39-40 [224 P.2d 808].) Here, however, defendant's trial counsel during discussion of instructions volunteered to assume the burden of proving consent. The instructions given and the special verdict form treated consent as an affirmative defense.

battery cause of action), (4) the instructions as a whole, and (5) the special verdict questions, it is reasonably probable a more favorable verdict would have resulted if the court had given plaintiff's requested instruction. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.*, *supra*, 36 Cal.3d at pp. 771, 774.) On retrial, of course, the 1992 version of the BAJI instructions would be appropriate.

### DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellant.

Woods (A. M.), P. J., and Hastings, J., concurred.