Filed 9/10/14  Certified for partial publication 10/8/14 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JENNIFER LOBO et al., | |
| Plaintiffs and Appellants, | E054523 |
| v. | (Super.Ct.No. RCVRS092140) |
| TAMCO, | OPINION |
| Defendant and Respondent. | |
| KILEY SAVANNAH LOBO, a Minor, etc., et al., | |
| Plaintiffs and Appellants, | |
| v. | (Super.Ct.No. RCVRS097029) |
| TAMCO, | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Barry L. Plotkin,

Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice

pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

1

Welebir Tierney & Weck and James F. Tierney III for Plaintiffs and Appellants Jennifer Lobo and Madison Lobo.

Robinson Calcagnie Robinson Shapiro Davis and William D. Shapiro for Plaintiffs and Appellants Kiley Savannah Lobo and Kadie Rose Lobo.

Mayer Brown, Donald M. Falk, Neil M. Soltman and Matthew H. Marmolejo for Defendant and Respondent.

Lewis Brisbois Bisgaard & Smith and Raul L. Martinez for the American Insurance Association and the Association of California Insurance Companies as Amici Curiae on behalf of Defendant and Respondent.

INTRODUCTION

In *Lobo v. Tamco* (2010) 182 Cal.App.4th 297 (*Lobo I*), we reversed a summary judgment in favor of the defendant, Tamco, and remanded the matter for further proceedings in the trial court. Trial was held solely on the issue of Tamco's vicarious liability for the negligence of its employee, Luis Del Rosario. The jury found in favor of Tamco. Plaintiffs,[1] the survivors of a deputy sheriff killed in a vehicular collision with Del Rosario's car as he left Tamco's premises (see *Lobo I*, at p. 299), contend that based on the legal principles we enunciated in *Lobo I*, the evidence adduced at trial compels a finding that Del Rosario was acting within the scope of his employment when the accident occurred. They also argue that the trial court erred in refusing a requested jury instruction.

___

[1] In general, we will refer to all four plaintiffs jointly as "plaintiffs." Where it is necessary to distinguish between them, we will refer to them by name.

2

We conclude that substantial evidence supports the verdict and that the court properly rejected the requested instruction. Accordingly, we will affirm the judgment.

BACKGROUND

Daniel Lobo, a San Bernardino County deputy sheriff, was killed on October 11, 2005, allegedly as the result of the negligent operation of a motor vehicle by defendant Luis Del Rosario, while acting in the course and scope of his employment by defendant Tamco. Del Rosario was leaving Tamco's premises. As he drove his car out of the driveway and onto Arrow Highway, he failed to notice three motorcycle deputies approaching with lights and sirens activated. Deputy Lobo was unable to avoid colliding with Del Rosario's car and suffered fatal injuries. (*Lobo I*, *supra*, 182 Cal.App.4th at p. 299.)

Deputy Lobo's widow, Jennifer Lobo, filed a wrongful death suit on behalf of herself and the Lobos' minor daughter, Madison. Kiley and Kadie Lobo, minor daughters of Deputy Lobo, filed a separate wrongful death action through their guardian ad litem. Both suits alleged that Del Rosario was acting within the course and scope of his employment by Tamco at the time of the accident. The cases were consolidated by the superior court. (*Lobo I*, *supra*, 182 Cal.App.4th at pp. 299-300.)

Tamco filed a motion for summary judgment or summary adjudication of issues, contending that the evidence established as a matter of law that Tamco was not vicariously liable for Deputy Lobo's death, in that Del Rosario was not acting within the course and scope of his employment, but was merely leaving work at the end of his workday, intending to go home, and was driving his personal vehicle. The trial court

3

granted summary judgment and entered a judgment of dismissal as to defendant Tamco. (*Lobo I*, *supra*, 182 Cal.App.4th at p. 300.)

We reversed the judgment with respect to causes of action for negligence and negligent operation of a vehicle, holding that there was a triable issue of material fact as to whether Del Rosario was acting in the course and scope of his employment. (*Lobo I*, *supra*, 182 Cal.App.4th at pp. 302-303.)

On remand, a trial was held solely to determine whether Del Rosario was acting within the course and scope of his employment at the time of the accident. The jury returned a special verdict stating that Del Rosario was not acting within the course and scope of his employment at the time of the accident, and judgment was entered for Tamco. The plaintiffs jointly filed a motion for new trial and a motion for judgment notwithstanding the verdict. The court denied both motions, and both sets of plaintiffs appealed.

LEGAL ANALYSIS

1.

THE VERDICT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

The two sets of plaintiffs make essentially identical arguments, the essence of which is that there is "no" evidence which supports the verdict in favor of defendant, and

4

that a verdict in their favor is required as a matter of law.[2]  Accordingly, we review the

record to determine whether there is any substantial evidence, contradicted or

uncontradicted, to support the verdict.  (*Bickel v. City of Piedmont* (1997) 16 Cal.4th

1040, 1053, abrogated by statute on another point as noted in *DeBerard Properties, Ltd.*

*v. Lim* (1999) 20 Cal.4th 659, 668-669.)  If there is substantial evidence which supports

the disputed finding, the judgment will be upheld even though substantial evidence to the

contrary also exists and the trier of fact might have reached a different conclusion had it

believed other evidence.  (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

Substantial evidence is evidence that a reasonable person "might accept as adequate to

support a conclusion" (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644), or evidence "that

is reasonable, credible and of solid value."  (*Roddenberry v. Roddenberry* (1996) 44

Cal.App.4th 634, 651 (*Roddenberry*).)

---

[2]  Kiley and Kadie Lobo argue that the trial court should have granted their motion for judgment notwithstanding the verdict.  Jennifer and Madison Lobo contend that the verdict is not supported by the evidence.

An order denying a motion for judgment notwithstanding the verdict must be upheld if there is any substantial evidence, contradicted or uncontradicted, to support the verdict.  (*Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 554-555.)  A defense verdict must be upheld against the plaintiff's assertion that the verdict is not supported by sufficient evidence unless the evidence compels a finding in favor of the plaintiff as a matter of law.  (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466.)  Although stated differently, these two standards of review come down to the same thing:  If there is *any* substantial evidence which supports the verdict in favor of the defendant, the judgment must be upheld.

In order to address plaintiffs' argument in their proper context, we must first review our holding in *Lobo I*, *supra*, 182 Cal.App.4th 297. In reaching the conclusion that there was a triable issue of fact as to whether Del Rosario was acting in the course and scope of his employment at the time of the accident, we stated:

"Under the theory of respondeat superior, employers are vicariously liable for tortious acts committed by employees during the course and scope of their employment. [Citation.] However, under the 'going and coming' rule, employers are generally exempt from liability for tortious acts committed by employees while on their way to and from work because employees are said to be outside of the course and scope of employment during their daily commute. [Citation.]

"'A well-known exception to the going-and-coming rule arises *where the use of the car gives some incidental benefit to the employer*. Thus, the key inquiry is whether there is an incidental benefit derived by the employer. [Citation.]' [Citation.] This exception to the going and coming rule, carved out by this court in *Huntsinger* [*v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 807], has been referred to as the 'required-vehicle' exception. [Citation.] The exception can apply if the use of a personally owned vehicle is either an express or implied condition of employment [citation], or if the employee has agreed, expressly or implicitly, to make the vehicle available as an accommodation to the employer and the employer has 'reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment.' [Citation]." (*Lobo I*, *supra*, 182 Cal.App.4th at p. 301.)

6

The evidence in *Lobo I* included the following: Tamco manufactures steel rebar used in construction. Del Rosario, a metallurgist, had been employed by Tamco as its manager of quality control for 16 years. According to his written job description, one of his responsibilities was to "'Answer all customer complaints and if necessary, visit customers [*sic*] facilities to gain information and/or maintain customer relations.'" (*Lobo I*, *supra*, 182 Cal.App.4th at pp. 301-302.) If a customer called with quality concerns, Del Rosario would accompany a sales engineer to the customer site so that he could answer any technical questions. The company did not provide a company car for that purpose. Although Del Rosario would most often ride to the site in the sales engineer's car, he did occasionally use his own car for that purpose if no sales engineer was available. When Del Rosario used his own car to visit a customer site, he was reimbursed for mileage. Del Rosario had visited customer sites "very few" times during the 16 years he worked at Tamco. During those 16 years, he estimated, he had used his own car 10 times or fewer. During 2005, the year of the accident, he visited customer sites five times or less, but on some of those occasions, he drove his own car. (It was not completely clear whether Del Rosario meant to indicate that he drove his car multiple times in 2005, but that is an inference which could be drawn from his testimony.) Del Rosario acknowledged that Tamco received a benefit from the use of his car. (*Lobo I*, *supra*, 182 Cal.App.4th at pp. 301-302 & fn. 4.)

When Del Rosario left Tamco on the day of the accident, he was going home. However, if he had been asked to visit a customer site, he "'would have gotten in [his]

7

car and used [his] car to go to that facility,'" just like on any other day. He kept boots, a helmet and safety glasses in his car. (*Lobo I*, *supra*, 182 Cal.App.4th at p. 302.)

James Crompton testified that as of July 2006, the date of his deposition, he had been Del Rosario's supervisor for roughly two years. During that period, he had approved Del Rosario's expenses for driving to a customer site two or three times. Both Del Rosario and Crompton testified that Del Rosario's physical presence was essential when customers had quality complaints because he was the sole employee with the expertise to determine whether products were defective. Crompton testified that Del Rosario is required to use his personal car to discharge that duty. He stated that Tamco does not provide Del Rosario with a company car in part because of the infrequency of customer complaints. It also does not provide company cars "at that level." Crompton stated that having Del Rosario present to speak to the customer's technical experts facilitates communications when problems arise. (*Lobo I*, *supra*, 182 Cal.App.4th at p. 302.)

Those facts, we held, rationally support the inference that Tamco received a benefit from the availability of Del Rosario's car whenever the need arose for him to visit a customer, even if he actually used his own car only rarely. We held that infrequency of actual use of an employee's vehicle for the benefit of the employer "should not, in and of itself, defeat the plaintiff's case." (*Lobo I*, *supra*, 182 Cal.App.4th at p. 303.)

We did not hold, as plaintiffs imply, that on the facts then before us, Tamco was liable as a matter of law. In any event, the evidence adduced at the trial was somewhat different from the evidence which was before us in *Lobo I*. In particular, Crompton retracted his deposition testimony.

Crompton testified that he had realized, when he reviewed his deposition in preparation for the trial, that his deposition testimony was in error when he said that Del Rosario was "required" to use his car if it was necessary, and that Tamco received a benefit from his doing so. He testified that Tamco did not rely on Del Rosario making his car available, and that Tamco did not receive any benefit if Del Rosario did use his own car to visit a customer's site. On the contrary, if Del Rosario drove separately from the sales engineer who also needed to respond to the customer's complaint, it doubled the cost to Tamco, because it would have to reimburse both Del Rosario and the sales engineer for their mileage. He said that on the few occasions that he had authorized Del Rosario to use his own car to visit a client, it was at Del Rosario's request and for his convenience—for example, when it made more sense for Del Rosario to drive directly to a customer's site from his home rather than driving to Tamco's offices and then to the site. Crompton testified that Tamco had never asked Del Rosario to use his own car. And, even if a sales engineer was not available to take Del Rosario to a customer site, Tamco could always have found a means of transporting Del Rosario without the use of Del Rosario's own car. In fact, the one time Del Rosario could recall that he was not allowed to use his car to visit a customer's site, it was because he needed a larger vehicle to transport a piece of steel. He was given the use of a company truck for that purpose.

9

In contrast, Del Rosario testified although it was not an express condition of his employment that he make his car available at all times in case he needed it to visit a customer's site, doing so when necessary was "part and parcel" of his job. He testified that although Tamco received very few customer complaints about the product it supplied, he had to be ready every day to respond to any customer complaints. He would use his own car to do so if no sales engineer was available to drive him to the customer's site. He testified that he could refuse to use his car, if, hypothetically, he chose to bicycle to work or his car was not in good working order. Nevertheless, if it was necessary to use his car, doing so was part and parcel of his job. And, he did drive to work every day and did make his car available every day in case he was called out to see a customer. He had used his car for that purpose at least once every year that he worked for Tamco.[3] He agreed that Tamco received a benefit from the availability of his car.[4] Further, he was on call outside of working hours to respond if Tamco needed him to do so. Accordingly, although he was leaving work to go home when the accident occurred, he was on call.

Del Rosario's and Crompton's testimony supports both the conclusion that the availability and occasional use of Del Rosario's car to attend to customer complaints did provide a benefit to Tamco and that it did not provide a benefit to Tamco but rather provided a benefit only to Del Rosario. Resolving the conflicts between their testimony

---

[3] He also testified that in 16 years, he visited customer sites fewer than 10 times.

[4] He also testified that Tamco did not receive a benefit from the availability of his car because Tamco paid his expenses if he did use his car. Accordingly, he considered it a "wash."

10

is the exclusive province of the jury:  When two or more inferences reasonably can be drawn from the evidence, a reviewing court is without power to substitute its deductions for those of the trier of fact.  (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874.)

Crompton's testimony is also substantial evidence that Tamco did not rely on the availability of Del Rosario's car.  According to Crompton, Tamco never asked Del Rosario to use his own car but on the contrary merely sometimes acquiesced in Del Rosario's desire to do so as an accommodation to Del Rosario.  He testified that Tamco could always have found another means to get him to a customer's site if Del Rosario for some reason could not ride with the sales engineer.  Del Rosario's testimony that Tamco on one occasion had him use a company truck when he needed it to transport a large piece of steel illustrates Crompton's point and is further evidence that Tamco did not rely on Del Rosario to make his car available.

It is not the case, as Kiley and Kadie Lobo assert, that the discrepancies between Crompton's deposition testimony and his trial testimony render his testimony not substantial evidence on which we may rely to uphold the judgment.  A declaration or testimony of a party may be deemed not substantial evidence sufficient to create a triable issue of fact in opposition to a motion for summary judgment or to oppose a motion for nonsuit if it contains an unexplained contradiction of an admission rendered by the party in discovery.  (See *Roddenberry*, *supra*, 44 Cal.App.4th at pp. 652-653, discussing, inter alia, *Mikialian v. City of Los Angeles* (1978) 79 Cal.App.3d 150, which is the case the plaintiffs rely upon.)  At trial, however, contradictions between a witness's testimony and his or her prior statements, under oath or otherwise, affect only the witness's credibility,

11

and it is exclusively the function of the jury to determine which, if any, of a witness's assertions are credible. (*People v. Holman* (1945) 72 Cal.App.2d 75, 89-90.) We may not substitute our view of a witness's credibility for that of the jury. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

Moreover, our decision in *Lobo I* did not preclude the possibility that a jury might conclude that although the availability of Del Rosario's car conferred some benefit on Tamco, it did not confer a *sufficient* benefit that Tamco should be vicariously liable for Del Rosario's negligence, or, stated another way, that the benefit Tamco derived was too incidental to warrant application of the doctrine of vicarious liability. The modern view of the basis for respondeat superior is that an employer is responsible for injuries resulting from "'risks that may fairly be regarded as typical of or broadly incidental to the enterprise [the employer] has undertaken.'" (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 (*Hinman*).) Accordingly, although we held that infrequency of the use of the vehicle "should not, *in and of itself*, defeat the plaintiff's case" (*Lobo I*, *supra*, 182 Cal.App.4th at p. 303, italics added), the trier of fact remains free to determine in a particular case that the employee's use of his or her vehicle was too infrequent to confer a sufficient benefit to the employer so as to make it reasonable to require the employer to bear the cost of the employee's negligence in operating the vehicle. This is particularly true in the absence of an express requirement that the employee make his or her vehicle available for the employer's benefit or evidence that the employer actually relied on the availability of the employee's car to further the employer's purposes. Again, the

12

evidence in this case rationally supports either conclusion. Accordingly, plaintiffs' contention fails.

2.

## THE TRIAL COURT PROPERLY REFUSED PLAINTIFFS' REQUESTED JURY INSTRUCTION

Plaintiffs contend that because "benefit" is a key concept under the required vehicle rule, the court should have given an instruction defining that word. They contend that the trial court committed prejudicial error when it refused every version of their proposed instruction defining "benefit." Defendant contends that the omission was not error, but even if it was, plaintiffs failed to show how it was prejudicial.

The court gave the following instructions, pertaining to the question posed by the special verdict, i.e., whether Del Rosario was acting in the course and scope of his employment with Tamco at the time of the accident:

"If an employer expressly or implicitly requires or reasonably relies upon an employee to make his vehicle available for work purposes or if the employer has reasonably come to expect that the employee's vehicle will be available for work purposes and the employer derives a benefit from such availability, then the employee's drive to and from work is within the scope of employment."

"Where the employer receives some incidental benefit from the employee's personal vehicle, the employer is liable for the employee's negligent acts during the commute to and from work. The key inquiry is whether there is some incidental benefit that the employer receives."

13

"An employee is acting within the course and scope of his employment if: [¶] (a) the use of a personally owned vehicle is either an express or implied condition of employment; [¶] or [¶] (b) even if it was not required as a condition of employment, if the employee has agreed, expressly or implicitly, to make his vehicle an accommodation to the employer and the employer has reasonably come to rely upon its use and to expect the employee to make the vehicle available on a regular basis."

"Where the employer provides no vehicle, use of a personal vehicle may be an implied condition of employment when the employment itself involves the use of a car to get from the employer's location to another location in the course of his [*sic*] duties for his employer. No words by the employer are necessary. That condition of employment may be implied from the circumstances of the employee's job duties and responsibilities."

"If you find Del Rosario's personal vehicle was either: [¶] (a) an express or implied condition of employment; OR [¶] (b) Del Rosario had agreed, expressly or implicitly, to make his vehicle available as an accommodation to Tamco and Tamco reasonably came to rely upon its use and to expect Del Rosario to make the vehicle available on a regular basis; AND [¶] (c) an incidental benefit to Tamco, then Tamco is liable for the harm caused by Luis Del Rosario's negligence during his commute to and from work."

14

"Is it not essential that the employee regularly used his or her vehicle for work, or that the job involved driving, or that driving was an integral part of the job. Rather, the key inquiry is whether or not the employer received a benefit from the availability of the vehicle."

"It is not the frequency of use of the employee's vehicle during his employment that course and scope of employment turns on. It may be a consideration. However, even if the employer rarely makes use of the employee's personal vehicle, that does not in and of itself defeat the finding that he [*sic*] was in the course and scope of his employment during his commute."

"The frequency or infrequency of Luis Del Rosario's use of his personal vehicle for Tamco business is a factor you can consider in determining whether Tamco obtained a benefit from that use."

These instructions state five different times that a finding that Del Rosario was acting within the course and scope of his employment depends upon a finding that Tamco derived some benefit from the availability of Del Rosario's car. Plaintiffs contend, however, that the instructions, although correct in and of themselves, were nevertheless insufficient because the word "benefit" was not defined. They insist that it was essential that the court use, in some form, the concept that the employee's vehicle was beneficial to the employer "in a manner different than any other employees who commute to and from work."

15

This language is derived from *Hinman*, *supra*, 2 Cal.3d 956. In that case, after discussing the "going and coming" rule, the California Supreme Court stated, "[E]xceptions will be made to the 'going and coming' rule where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." (*Id*. at p. 962.) In that case, Westinghouse's employee, an "elevator constructor's helper" struck and injured a police officer as the employee was returning home from a jobsite at the end of the workday. The terms of the employee's employment were that he would go directly to a jobsite from his home in the morning and return home directly from the jobsite at the end of the day. He did not go to the Westinghouse office either before going to the jobsite or at the end of his workday. He was paid for his travel time and expenses. (*Id.* at p. 959.) Because his commute to and from work was part of his workday, the "going and coming" rule did not apply. The court held that "where, as here, the employer and employee have made the travel time part of the working day by their contract, the employer should be treated as such during the travel time, and it follows that so long as the employee is using the time for the designated purpose, to return home, the doctrine of *respondeat superior* is applicable" because the employer received a sufficient benefit that it should bear responsibility to innocent third parties for the risks inherent in the travel. (*Id.* at p. 962.)

The rule *Hinman* states is not, however, the rule of law applicable to this case. Here, the particular trip Del Rosario was engaged in at the time of the accident was not part of his workday and did not provide a benefit to Tamco. Rather, the plaintiffs' theory of the case was that Tamco received a benefit from the availability of Del Rosario's car

16

and had come to rely on that availability, such that it should be responsible for the risks involved in Del Rosario making his car available during the working day.

In any event, we are not persuaded that the phrase "not common to commute trips by ordinary members of the work force" (*Hinman*, *supra*, 2 Cal.3d at p. 962) or some variation thereon is necessary in order to convey the concept of benefit, either in a situation covered by *Hinman* or in the situation present in this case. Here, the jury was explicitly and with considerable elaboration told that if Tamco benefitted from the availability of Del Rosario's car, it was liable for his negligence. Plaintiffs do not contend that these instructions were incorrect.

An instruction which is correct in general may need clarification in the circumstances of a particular case, and failure to give a requested clarification is prejudicial error if it is reasonably probable that a more favorable verdict would have resulted if the court had given the requested clarification. (*Barouh v. Haberman* (1994) 26 Cal.App.4th 40, 45-48.) However, definition of a word which is "'within the understanding of persons of ordinary intelligence'" and which does not have a technical, legal meaning that differs from its nonlegal meaning, is not required. (*People v. Raley* (1992) 2 Cal.4th 870, 901; see *People v. Estrada* (1995) 11 Cal.4th 568, 574.) "Benefit" is a word which is readily understood by ordinary speakers of English, and in the context of the required-vehicle-use rule, it is not used in a technical legal sense which differs from its ordinary meaning. Accordingly, no clarification was necessary, and plaintiffs were not prejudiced by the absence of a definition.

## DISPOSITION

The judgment is affirmed.  Defendant Tamco is awarded costs on appeal.

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

Filed 10/8/14

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JENNIFER LOBO et al., | |
| Plaintiffs and Appellants, | E054523 |
| v. | (Super.Ct.No. RCVRS092140) |
| TAMCO, | **ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION** |
| Defendant and Respondent. | [NO CHANGE IN JUDGEMENT] |
| KILEY SAVANNAH LOBO, a Minor, etc., et al., | |
| Plaintiffs and Appellants, | |
| v. | (Super.Ct.No. RCVRS097029) |
| TAMCO, | |
| Defendant and Respondent. | |

THE COURT

After reviewing the requests for publication filed in this matter, we conclude the above-entitled unpublished opinion filed September 10, 2014, meets the standards for partial publication as specified in California Rules of Court, rule 8.1105(c)(2) and (c)(3).

1

Therefore, the opinion is certified for partial publication, with the exception of part 2 of the Legal Analysis, entitled "The Trial Court Properly Refused Plaintiffs' Requested Jury Instruction," (located on pages 13-17).

There is no change to the judgment.

CERTIFIED FOR PARTIAL PUBLICATION


McKINSTER

Acting P. J.

We concur:


MILLER

J.


CODRINGTON

J.

2